**In re ERIE HILTON JOINT VENTURE, a Pennsylvania Limited Partnership doing business as the Quality Hotel Plaza, Debtor.**

**OFFICIAL UNSECURED CREDITORS' COMMITTEE OF ERIE HILTON JOINT VENTURE, Plaintiff,**

**v.**

**William SISKIND; Consolidated Management, Inc.; Leon Levitsky; Henry Fensterwald; Arvin E. Rosen; Herman Rubin; Bernice Hutzler; and Maurice Wyatt, Defendants.**

**Bankruptcy No. 89–00571E.**
**Adv. No. 91–0091.**

United States Bankruptcy Court,
W.D. Pennsylvania.

March 6, 1992.

Lawrence C. Bolla, Erie, Pa., for Official Unsecured Creditors' Committee.

Guy C. Fustine, Erie, Pa., for Herman Rubin.

Gary V. Skiba, Erie, Pa., for William Siskind and Consolidated Management, Inc.

Charles D. Agresti, Erie, Pa., for Arvin S. Rosen, Leon Levitsky and Maurice Wyatt.

James H. Richardson, and Harry D. Martin, Erie, Pa., for debtor.

Philip B. Friedman, Erie, Pa., for Bernice Hutzler.

John Martin Klein, Baltimore, Md., for Henry Fensterwald.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Introduction

The Official Unsecured Creditors' Committee ("Creditors' Committee" or "Committee") of the Erie Hilton Joint Venture ("Debtor") filed the within Complaint to Compel Turnover of Property of the Estate ("Complaint"). The Committee demands judgment against Consolidated Management, Inc., the Debtor's corporate general partner; William Siskind, President of the corporate general partner; and the Debtor's limited partners—Herman Rubin, Maurice Wyatt, Arvin Rosen, Leon Levitsky,

Henry Fensterwald, and Bernice Hutzler (collectively, the "Defendants"). The Committee demands judgment in the amount of $1,000,000 against the Defendants, not in their capacity as general and limited partners, but rather, as individuals who agreed to invest an amount sufficient to fund the Debtor's Second Amended Plan of Reorganization ("Second Amended Plan" or "Confirmed Plan") which was confirmed by this Court on October 3, 1990. Without the required funding, the Confirmed Plan cannot be consummated.

All parties have subsequently agreed that Defendants Fensterwald and Hutzler made no commitment to provide funds; that the documents reflect no such agreement; and that Defendants Fensterwald and Hutzler should be dismissed as Defendants to the Complaint.

Presently before the Court are Motions to Dismiss the Complaint on behalf of all other Defendants. The issues raised by the Defendants are that this Court lacks jurisdiction; that the Committee lacks standing; and that the Complaint fails to state a claim on which relief can be granted. Defendant Siskind further asserts that he is in the same category as Fensterwald and Hutzler, as he made no agreement to provide funds and there are no documents which reflect such an agreement.

### Factual and Procedural Background

The Debtor filed its voluntary Petition under Chapter 11 of the Bankruptcy Code on October 12, 1989 on the eve of foreclosure by the Prudential Insurance Company of America ("Prudential") on the Debtor's single asset, a hotel known as the Quality Hotel Plaza (formerly a "Hilton" hotel) in Erie, Pennsylvania (the "Hotel").

On April 26, 1990, the Debtor filed its original Plan of Reorganization ("Original Plan") and Disclosure Statement. Under the Original Plan, the Debtor was to continue to own and operate the Hotel, and Prudential's allowed secured claim was to be amortized over a thirty year period. Unsecured creditors were to be paid a twenty percent dividend, payable over a period of six years after confirmation. At the Debt-

or's option, a certain percentage of the unsecured claims could be paid within thirty days of the Effective Date of the Original Plan.

Article IV of the Original Plan, entitled "Means of Execution of the Plan," states that a new corporation would be formed to take over the position of general partner. The new corporation would contract with a professional management company, secure a nationally-recognized hotel franchise, and raise additional capital to carry out the debt service provided by the Original Plan. A hearing was held on May 29, 1990 to consider approval of the Debtor's Original Disclosure Statement. In attendance were counsel for the Debtor, counsel for the Committee, counsel for Prudential, the United States Trustee, Mr. William Siskind and Mr. Herman Rubin. Numerous objections were raised, including an objection that the Debtor failed to adequately disclose the identity and the financial wherewithal of the proposed investors.

In response to comments made on May 29, 1990, the Debtor filed an Amended Plan of Reorganization (the "First Amended Plan") and an Amended Disclosure Statement on June 1, 1990. The First Amended Plan changed Prudential's treatment to provide that the secured claim of Prudential be fully due and payable by means of a "balloon payment" on the seventh anniversary of the Effective Date of the Plan. As with the Original Plan, Article IV of the First Amended Plan provided that a new corporation would raise additional capital in the amount of $1,000,000 by the Effective Date of the Plan.

On June 4, 1990, the Court entered an order approving the Amended Disclosure Statement, and set a hearing on confirmation of the First Amended Plan for July 9, 1990.

On June 5, 1990, the Debtor filed a Combined Summary of Plan for Reorganization and Disclosure Statement ("Combined Summary"). The Combined Summary states in pertinent part:

A Plan has been proposed on behalf of Hilton by a New Corporation which would be funded with one million dollars.

The New Corporation is owned 60% by Herman Rubin and 40% by Leon Levitsky. The million dollars is being provided by the following individuals:

| | |
|---|---:|
| Herman Rubin | $ 352,168 |
| Leon Levitsky | 352,168 |
| Consolidated Management, Inc. | 135,000 |
| Arvin E. Rosen | 52,727 |
| Maurice Wyatt | 107,937 |
| | $1,000,000 |

On June 7, 1990, the Debtor served upon all creditors and equity holders the Combined Summary, the Order Approving Disclosure Statement and a Ballot for Accepting or Rejecting the First Amended Plan. Defendants, Levitsky, Rubin, Wyatt, Rosen, and Consolidated Management, Inc., filed Ballots accepting the First Amended Plan.

At the confirmation hearing held on July 9, 1990, in response to questions by the United States Trustee and Prudential as to the ability of the investors to fund the First Amended Plan, counsel for the Debtor stated:

And when it comes to the cash commitment, Judge, Mr. Rubin, as well as our office, has an investment of funds in escrow that are sufficient to fund the plan. Mr. Rubin has a certain amount of funds, and the remaining funds are held through Prudential–Bache. ...

A little over four hundred thousand dollars is escrowed at Pennbank for certain investors. I understand Mr. Rubin has secured the rest of the funds necessary. The cash commitment is there. They just aren't idle promises. The cash exists. All we need is the final order to get this back on its feet. As long as we continue to have adversity and continued trials as opposed to a prompt resolution, we are going to continue in this difficult period. We are looking forward to the opportunity of investing this money and making this business what it should be.

Transcript of Hearing at 33–34, Bankr. No. 89–00571E, Mtn. No. 90–496, July 9, 1990.

Not all impaired classes of claims accepted the First Amended Plan. The Debtor requested that the Plan be confirmed under the "cram down" provisions and the Court

scheduled an evidentiary hearing on confirmation for August 1, 1990.

On July 31, 1990, the Debtor filed a Petition (sic) to Modify Plan of Reorganization ("Petition"). The Petition summarized a transaction whereby Prudential was to be given control of the Hotel, and the Debtor was to acquire another property in exchange for the Hotel in order to effectuate a "like kind" exchange under Section 1031 of the Internal Revenue Code, 26 U.S.C. § 1031 (1988). The Petition stated that all other creditors would be treated as provided in the Original Plan and First Amended Plan. On page 4 of the Petition, it is stated that "[Debtor] intends to pay the cash equivalent of the payments provided under the Original Plan in order to assure these creditors payment without concern for the success of this Revised Plan of Reorganization."

On August 23, 1990, the Debtor filed a Second Amended Plan of Reorganization. The Second Amended Plan states that "[t]he Plan as originally filed is incorporated herein by reference with the following changes:". An Exchange Agreement is attached to the Second Amended Plan, providing that the Debtor would convey the Hotel to New Enterprise Title Group, Inc. ("New Enterprise"), and in return, the Debtor was to acquire "like kind" property as defined by Section 1031 of the Internal Revenue Code.

On September 5, 1990, the Debtor filed a "Combined Summary of Seconded [sic] Amended Plan for Reorganization and Disclosure Statement" (the "Second Combined Summary"). The first page of the Second Combined Summary provides:

A Plan has been proposed on behalf of [Debtor] by a New Corporation which would be funded with cash for all sums required by this Plan. The New Corporation is owned 60% by Herman Rubin and 40% by Leon Levitsky. The cash is being provided by the following individuals: Herman Rubin, Leon Levitsky, Consolidated Management, Inc., Arvin E. Rosen, Maurice Wyatt.

On the same date, September 5, 1990, the Court held a status conference. The Debtor and the Committee advised the Court that the Second Amended Plan provided the same treatment to all parties, except that Prudential was given control of the Hotel and it provided for a tax-free exchange under § 1031 of the Internal Revenue Code to enable the Debtor's limited partners to maintain their tax benefits. It was understood that the same parties who were to fund the previous plans were also willing to fund the Second Amended Plan in an effort to preserve their tax benefits.

The Debtors urged the Court to confirm the Second Amended Plan without further notice. Due to the tax avoidance nature of the Second Amended Plan, the Court entered an Order on September 5, 1990 which required that the Debtors serve the Second Amended Plan on the Internal Revenue Service and all counsel of record. Based upon the representations of counsel that no other parties were affected by the change, the Court did not require re-balloting.

A continued hearing on confirmation of the Second Amended Plan was held on October 3, 1990. Hearing no objections, the Court entered an Order Confirming Plan of Reorganization (the "Confirmation Order").

The Confirmation Order recites that the Second Amended Plan or the Second Combined Summary was served to all creditors and equity security holders. This is in error. Certificates of Service filed by the Debtor indicate service was made only upon the Internal Revenue Service, counsel of record, William Siskind and Herman Rubin. The Court did not require service upon all creditors and equity security holders based on the representations of the Debtor and the Agreement of the Creditors' Committee that the Second Amended Plan had no effect on those parties; that the only differences were that Prudential received the Hotel and that the limited partners preserved their tax benefit by finding an exchange property.

In addition, on October 3, 1990, the Court entered a Post–Confirmation Order and Notice with respect to the Second Amended Plan (the "Post–Confirmation Order").

The Confirmation Order and Post–Confirmation Order were served upon all creditors and equity security holders and no appeal was taken.

The Original and First Amended Plans, incorporated by reference in the Second Amended Plan, in Article VI thereof states the following:

The Court shall not retain jurisdiction during the entire term of the implementation of this Plan of Reorganization. Nevertheless, the Court shall retain jurisdiction to make the following determinations before entering an Order concluding and terminating this case:

1. The classification of the claim of any creditors and the re-examination of claims that have been allowed for other purposes of voting and the determination of such objections as may be filed to the creditors' claim. The failure by the Debtors to object to, or examine any claim for the purposes of voting, shall not be deemed to be a waiver of the Hilton's right to object to, or re-examine each claim in whole or in part.

2. The determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of confirmation, between the Hilton and any other party, including, but not limited to, any right of the Hilton to recover assets pursuant to the provisions of Title 11 of the United States Code.

3. The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the Order of Confirmation as may be necessary to carry out the purposes and intent of this Plan.

4. The entry of an Order, including injunctions, necessary to enforce the title, rights and powers of the Hilton and the imposition of such litigations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary.

5. The approval of the compensation, costs and expenses of the Hilton and its counsel in accomplishing its obligations hereunder to escrow and disburse funds and the resolution of any dispute between the Debtor and any real property in interest hereunder.

Pleadings initiating action on any of the above topics must be filed within 120 days after the Effective Date of the Plan. Any such matter that is not raised by pleadings filed within said 120 day period shall be deemed to be waived.

The Effective Date of the Second Amended Plan was October 13, 1990, as provided in Paragraph 8 of the "Definitions" section of the Original Plan and First Amended Plan.

The Post–Confirmation Order states that "[a]ny other adversary proceeding, contested matter, motion or application shall be filed within forty-five (45) days after the date of this Order[.]" and that "[a]ny time period established in this Order may be extended by the Court for cause after notice and hearing, but only upon motion filed prior to the deadline established under the relevant paragraph of this Order."

The Committee did not seek nor obtain an extension of the 45–day deadline within which to file the Complaint.

On May 18, 1990, Defendant Rosen transferred the sum of $52,727 to the Debtor's counsel, Harry Martin, Esq. ("Martin"). Between May 18 and May 29, 1990, Defendant Levitsky wire transferred to Martin the sum of $350,000 and Defendant Wyatt wire transferred to Martin the sum of $50,000. Martin currently holds the funds submitted by Rosen, Levitsky and Wyatt in escrow.

On June 21, 1991, the Debtor filed a Motion to Authorize Distribution of Funds, Motion No. 91–972, which seeks authorization to utilize the funds deposited by Rosen, Levitsky and Wyatt to fund the Confirmed Plan.

On June 26, 1991, the Committee filed the within Complaint.

On July 2, 1991, Defendants Levitsky, Rosen and Wyatt filed a Complaint to Compel Surrender of Escrow Funds not Property of the Estate, in which they seek to

recover for themselves the funds which Martin holds in escrow.

We have determined that the Committee's Complaint should be resolved prior to resolution of the Debtor's Motion and Levitsky, Rosen and Wyatt's Complaint.

## Discussion

### I. Jurisdiction

The Defendants assert that our Confirmation Order and Post-Confirmation Order limit our jurisdiction to a period of 120 days following the Effective Date of the Confirmed Plan. This argument is without merit.

 The mere fact that a Chapter 11 Plan has been confirmed is not sufficient to divest us of jurisdiction. *In re Service Decorating Co.*, 105 B.R. 859 (ND Ill. ED 1989); *In re Chernicky Coal Co. Inc.*, 67 B.R. 828 (Bankr.WD Pa.1986). A Chapter 11 Plan is not finalized until the parties' rights have vested by the act of substantial consummation.

11 U.S.C. § 1142(b) provides authority for this Court to direct any necessary party to perform any other act that is necessary for consummation of a confirmed plan. Thus, the Bankruptcy Code contains the requisite basis for the Court to interpret the Confirmed Plan and to compel the Defendants to fund the Confirmed Plan provided that it so requires and that the Confirmed Plan properly sets forth the agreement of the parties.

Without resolution of these controversies, it is impossible to administer the estate, implement the Confirmed Plan, and close this case. We clearly have jurisdiction.

### II. Standing

The Defendants attack the Committee's standing on two grounds. First, the Defendants assert that, at confirmation, all property of the estate vested in the Debtor; that there is no longer an estate, and therefore, a Complaint to Compel Turnover of Property of the Estate is improper. Secondly, the Defendants assert that such a cause of action belongs to the Debtor, not the Committee.

 We agree that, upon confirmation, all property of the estate vested in the Debtor. *In re Erie Hilton Joint Venture*, 125 B.R. 140 (Bankr.WD Pa.1991). However, we retain jurisdiction to oversee execution of the Confirmed Plan. 11 U.S.C. § 1142.

The Committee's Complaint seeks compliance with the terms of the Confirmed Plan which will enable consummation and provide the unsecured creditors with their promised dividend. Such an action might better have been commenced under a Motion to Compel Compliance. However, to dismiss the Committee's Complaint and then permit the Committee to file a separate motion is a waste of effort. All of the necessary parties and issues are before the Court. We will proceed under the Complaint.

 The Defendants assert that before the Committee may initiate such an action, it must hold a "colorable claim," make a demand upon the Debtor to bring the action which is unjustifiably refused, and seek leave of Court to commence the action.

As we state below, the Committee holds a "colorable" claim. In the instant situation, almost nine months elapsed between the date of confirmation and the filing of the Complaint, during which time the Debtor failed to take action to compel the cash infusion and consummate the Confirmed Plan.

At a status conference held June 6, 1991 on resolution of pending matters between the Debtor and Prudential, Debtor's counsel advised the Court of the issues concerning funding of the Confirmed Plan. Colloquy took place, in pertinent part, as follows:

THE COURT: I suppose that the funds that are in the escrow account are subject to jurisdiction of the Court because they were there as a deposit on a plan, and we have to resolve it somehow.

I think we will adjourn. You can stay here, if you wish. I think what one of things you have to figure out is, if you can't resolve it, is how procedurally to

crystallize the issue, how to formulate some pleadings that will tell us what the issues are. And then proceed to dispose of them.

MR. BOLLA: Judge, I was giving that some thought while you were discussing that. Possibly either my office or Mr. Martin's office could file Complaints against each of the individuals named in the second plan for the total amounts of the contributions. They have the ability to file Answers, and at least the matters would be at issue.

MR. RICHARDSON: We could also just file a motion to authorize disbursement, and serve all interested parties.

THE COURT: And then defenses to that can be brought up.

MR. AGRESTI: At least with Mr. Bolla's suggestion, we get the contributing limiteds out, especially Mr. Rubin, whose idea this—he originated the idea.

MR. RICHARDSON: Your Honor, if Mr. Agresti would like to bring some sort of an adversary action in this Court to bring Mr. Rubin in, he's welcome to do so. *I'm not sure we should.* (emphasis added)

THE COURT: The creditors—

MR. BOLLA: I'll be happy to.

THE COURT: Maybe you have to do both. One is a motion to distribute, and other side of it—one side would pertain to those who contributed money, and the other side to those who have not and perhaps to those who someone might allege should contribute more. Fine. Can we do anything more here?

MR. AGRESTI: Maybe we can talk, and get back to you.

THE COURT: You're free to use the courtroom.

(Hearing concluded at 4:20 p.m.)

Transcript of Hearing at 29–31. Bankr. No. 89–00571, Adv. No. 90–137, June 6, 1991.

This colloquy demonstrates the reluctance of the Debtor to pursue the investors and the lack of direction which Debtor's counsel is receiving from its clients. We believe this colloquy also constitutes leave of the Court for the Committee to file its Complaint. We hold that the Committee

has standing to file the Complaint and seek the relief requested therein.

### *Failure to State a Claim*

█ The Committee and the Defendants agree that the Confirmed Plan is a contract and the rules of contract govern its interpretation. The Defendants state that the Second Combined Summary should not be considered as part of the Confirmed Plan and that the Second Combined Summary is the Committee's only basis for holding the Defendants liable.

Our Confirmation Order provides:

• • • • •

NOW, THEREFORE, IT IS ORDERED AS FOLLOWS:

The Second Amended Plan of Reorganization (copy of which is attached hereto, together with:

(1) Combined Summary of Second Amended Plan for Reorganization and Disclosure Statement,

(2) Petition to Modify Plan of Reorganization,

(3) Amended Plan for Reorganization, and

(4) Plan for Reorganization)

is hereby confirmed, . . .

The Confirmed Plan must be read so as to include the provisions of all documents which were confirmed together to form the contract.

Based on the terms of the Confirmed Plan, as fully set forth in the Second Combined Summary, Defendants Rubin, Levitsky, Rosen, Wyatt and Consolidated Management, Inc. are contractually obligated to provide the cash infusion required by the Confirmed Plan.

█ The Complaint will not be dismissed for failure to state a claim on which relief can be granted. It appears that the Committee would be entitled to Summary Judgment but for the following question of fact—whether the Defendants had knowledge of or agreed to the Confirmed Plan?

*Defendant Siskind*

The Complaint alleges no facts or theory that would impose liability upon Defendant Siskind. No responsibility of Defendant Siskind is set forth in any plan, disclosure statement or summary.

Siskind's Motion to Dismiss will be granted.

An appropriate Order will be entered.