**In re TANNEN TOWERS ACQUISITION CORP.**

Bankruptcy No. 97–16449(JEI).

United States District Court, D. New Jersey.

July 23, 1999.

Laurence J. Bravman, Green Brook, NJ, for the Appellant SEBCO Laundry Systems, Inc.

Carol L. Knowlton, David A. Martin, Teich, Groh and Frost, Trenton, NJ, for the Appellee Tannen Towers Acquisition Corp.

## OPINION

IRENAS, District Judge.

This appeal requires this Court to consider the jurisdiction of the Bankruptcy Court to entertain a petition to be named as an unsecured creditor after a bankruptcy plan has already been confirmed. The Bankruptcy Court appears to have found that it lacked jurisdiction to hear the late claim and dismissed the petition. This Court finds that the Bankruptcy Court has jurisdiction to hear the claim and reverses the Order of the Bankruptcy Court.

## I. BACKGROUND

SEBCO Laundry Systems, Inc. ("SEB-CO" or "appellant") leases the laundry space located in residential apartment buildings and condominium complexes and installs and operates coin-metered laundry equipment. Tannen Towers Acquisition Corp. ("Tannen" or "Debtor") was an entity whose primary asset was a parcel of real estate located at 100 S. North Carolina Avenue, Atlantic City, New Jersey, with improvements consisting of a 294–unit apartment building ("Property"). On January 14, 1997, Tannen filed a voluntary Chapter 11 petition under Title 11 of the United States Bankruptcy Code ("Bankruptcy Code"). Vasfi Uyar ("Uyar"), along with his wife Conchita, are the equity holder's of Tannen.

On August 11, 1995, SEBCO entered into a written lease agreement ("the lease") with Uyar for the lease of laundry space at property owned by Tannen. An examination of the lease reveals that the contract was between Uyar and SEBCO without any mention of Tannen. Under this lease, SEBCO was scheduled to take possession of the laundry space on September 15, 1995. As of this date, SEBCO has never obtained possession of the premises named in the lease and contends that Uyar has not honored the terms of the lease.

SEBCO maintains that it attempted to resolve the conflict without resorting to litigation for three years until negotiation became futile. SEBCO filed a complaint against Uyar on April 13, 1998, in the Law Division of the Superior Court of New Jersey, Atlantic County, for breach of the lease, specific performance and compensatory damages, including lost profits. On July 21, 1998, Uyar filed an Answer which denied responsibility and asserted that he was not personally liable on the lease because he was acting as an agent on behalf of Tannen. SEBCO claims that it was never informed by Uyar that he was acting on behalf of Tannen, and did not know that Tannen was a potential litigant until Uyar answered the complaint.

Following Uyar's assertion of this defense, SEBCO petitioned the Bankruptcy Court to be named as an unsecured creditor in the Chapter 11 action initiated by Tannen to recover $683,841.60 in lost revenue. By the time this petition was filed, the Bankruptcy Court had already confirmed Tannen's reorganization plan without mention of SEBCO's claim. In the course of Tannen's bankruptcy proceedings, SEBCO was never named as a potential creditor and was not given notice of Tannen's plan of reorganization. SEBCO argues that if Uyar possessed the authority to bind Tannen and was exercising that authority when he entered into the lease agreement, SEBCO has a valid claim against Tannen. Despite the lateness of its request, SEBCO argues that it should be allowed to pursue the claim because it was not notified of Tannen's bankruptcy prior to the confirmation of the bankruptcy plan.

Tannen maintains that it acted in good faith when it failed to give SEBCO notice of the proceedings. Specifically, Tannen claims that Uyar acted as a principle in the negotiations with SEBCO and did not have authority to bind Tannen to the lease. Since Tannen was not a party to the lease, it argues that there was no notice of SEBCO's claim prior to the current petition. Additionally, Tannen argues that there is no evidence to suggest that it was aware that SEBCO had attempted to resolve the dispute prior to filing suit.

## II. PROCEDURAL HISTORY

Tannen filed a voluntary Chapter 11 petition under Title 11 of the Bankruptcy Code on January 14, 1997. Shortly thereafter, on July 31, 1997, Tannen entered into a contract for the sale of the Property to Tannen 110 Realty, LLC, for $10,600,-000.00, subject to court approval pursuant to 11 U.S.C. § 363. On October 6, 1997, an Order approving the sale was entered

which required the closing to be consummated by October 21, 1997.

On August 6, 1997, the Bankruptcy Court issued a Notice of Commencement of the Chapter 11 proceedings which set a Claims Bar Date of December 1, 1997 ("claims bar date"). Tannen filed a Plan of Liquidation along with a Disclosure Statement on September 3, 1997. The Plan of Liquidation provided for the sale of the Property to Tannen 110 Realty, LLC, and a 100% distribution of allowed claims for unsecured creditors.

On December 4, 1997, Tannen filed a First Amended Disclosure Statement which was approved by the Court on December 10, 1997. On December 4, 1997, Tannen filed a First Amended Plan of Liquidation ("First Amended Plan"), which was confirmed by an Order on February 19, 1998.

On February 20, 1998, Tannen filed a motion for the authorization of the disbursement of funds, escrow for administrative expenses, and release of previously escrowed funds. On March 16, 1998, the Court authorized Tannen's counsel as the disbursing agent under the First Amended Plan, to disburse the sum of $820,131.62 to general unsecured creditors, $1,620,832.47 to Tannen's equity holders, and to retain the sum of $409,769.49 in escrow for satisfaction of administrative expenses and several other claims.[1]

Throughout this entire process, SEBCO claims that it was unaware of the bankruptcy proceeding and its potential claim against Tannen. On August 1, 1998, within one week of learning that Uyar was claiming that he entered into the contract on behalf of Tannen, SEBCO filed its application for leave to file a late proof of claim.

On August 24, 1998, the United States Bankruptcy Court for the District of New Jersey heard argument from counsel and

decided to allow additional briefing on whether the Bankruptcy Court had subject matter jurisdiction over SEBCO's application. On September 4, 1998, SEBCO submitted a Memorandum of Law in Further Support of its Application, and Tannen submitted one in opposition on September 19, 1998. On October 5, 1998, the Court denied SEBCO's petition. The instant appeal followed on December 22, 1998.

## III.  STANDARD OF REVIEW

■ The standard of review applied by a district court when reviewing the ruling of a bankruptcy court is determined by the nature of the issues presented on appeal. Finding of fact are not to be set aside unless they are "clearly erroneous." *See* Fed. R. of Bankr.P. 8013; *In re Indian Palms Associates, Ltd.*, 61 F.3d 197, 203 (3d Cir.1995); *J.P. Fyfe, Inc. v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3d Cir. 1989). Questions of law are subject to de novo or plenary review. *In re Brown*, 951 F.2d 564, 567 (3d Cir.1991); *J.P. Fyfe*, 891 F.2d at 69.

## IV.  DISCUSSION

At stake in this appeal is whether SEBCO will be allowed to file a late claim in the bankruptcy proceedings initiated by Tannen after the bankruptcy plan has already been confirmed. The Bankruptcy Court denied the petition without explicitly stating if its decision was on the merits or based on a lack of jurisdiction. However, the transcript from the August 24, 1998, Bankruptcy Court hearing establishes that the Court was concerned primarily with jurisdiction. The Court devoted much of the hearing to the question of whether jurisdiction existed, and finally allowed additional time for the parties to submit a letter brief on post-confirmation jurisdiction. Once the additional briefs were received, the decision was handed down denying SEBCO's action.

---

1. This Court assumes that the balance of the $10.6 million purchase price was used to satisfy outstanding liens and mortgages.

Since the Bankruptcy Court issued its ruling without an explanation, this Court must first determine if subject matter jurisdiction exists. If the Bankruptcy Court lacked jurisdiction to hear the claim, its decision will be affirmed. If subject matter jurisdiction exists, this Court will determine if SEBCO is allowed to file a late claim. If a late claim is not permitted at this juncture in the proceedings, this Court will affirm the decision of the Bankruptcy Court. If a late claim is allowed, this Court will determine if the claim has merit. If this Court finds that the claim has merit, this case will be remanded to the Bankruptcy Court.

## A.

The first step in this Court's analysis is to determine whether the Bankruptcy Court possessed jurisdiction to hear SEBCO's claim. A study of the relevant case law suggests that jurisdiction may exist if: 1) SEBCO's Due Process rights were violated; 2) a final decree has not been issued in the bankruptcy proceedings; or 3) the confirmation order was procured by fraud. This Court finds that jurisdiction exists under one or all of the above listed grounds and, therefore, the Bankruptcy Court should have reached the merits of SEBCO's claims.

### 1.

A Bankruptcy Court retains jurisdiction if no notice of the bankruptcy proceeding was given to the creditor. Due process requires that a known creditor must have actual notice of bankruptcy proceedings before they can be barred from filing a late claim. *See New York v. N.Y., N.H. & H.R. Co.*, 344 U.S. 293, 297, 73 S.Ct. 299, 97 L.Ed. 333 (1953); *Chemetron Corp. v. Jones*, 72 F.3d 341, 345 (3d Cir. 1995), *cert. denied*, 517 U.S. 1137, 116 S.Ct. 1424, 134 L.Ed.2d 548 (1996); *Reliable Electric Co. v. Olson Constr. Co.*, 726 F.2d 620 (10th Cir.1984) (discharging a claim where there was no notice of a confirmation hearing violates Fifth Amendment);

*In re Trump Taj Mahal Assoc.*, 156 B.R. 928, 940 (Bankr.D.N.J.1993) (ruling that a reasonably calculated notice to interested parties is necessary to satisfy Due Process requirements). It would be inequitable to disallow a creditor's claim without giving them an opportunity to participate in the reorganization process. *See Broomall Ind., Inc. v. Data Design Logic Systems, Inc.*, 786 F.2d 401 (Fed.Cir.1986) (ruling that Fifth Amendment takes precedence over discharge provisions where no notice was given to claimant); *In re Texas Tamale Co., Inc.*, 219 B.R. 732, 737 (Bankr. S.D.Tex.1998).

Courts have consistently ruled that when there is no notice of the claims bar date or of the confirmation hearing, a late claim is not barred. *See In re Unioil*, 948 F.2d 678 (10th Cir.1991) (reversing bankruptcy court for barring a creditor's claim when there was no notice of the claim's bar date or confirmation hearing); *In re General Oil Distributors, Inc.*, 68 B.R. 603 (Bankr.E.D.N.Y.1986). Accordingly, if it is shown that SEBCO was a known possible creditor who was not given notice of the bankruptcy proceedings, the Bankruptcy Court has jurisdiction to allow a claim filed after confirmation.

It is undisputed that SEBCO did not receive notice of the bankruptcy proceedings until Uyar asserted his affirmative defense in the state court proceedings. Tannen states that it did not notify SEBCO of their proceedings because it was not a known creditor, and that SEBCO was not owed actual notification. *Compare In re Brooks Fashion Stores, Inc.*, 124 B.R. 436, 444 (Bankr.S.D.N.Y.1991) (ruling that debtor did not "knowingly" fail to list creditor in petition). However, this explanation is suspect since Uyar, who has asserted that SEBCO's claim is against Tannen, certainly had input into preparing the bankruptcy schedules as he and his wife were the owners of the apartment. *See* discussion *infra* pp. 754–755, 755–756. The Bankruptcy Court certainly has jurisdiction to determine whether SEBCO's

Due Process rights were violated when it failed to receive notification.

### 2.

█ It is uncontested that Tannen's bankruptcy plan has been confirmed but remains open pending a final decree. Courts have ruled that the confirmation of a bankruptcy plan does not completely divest a bankruptcy court of its jurisdiction. *See e.g., In re Erie Hilton Joint Venture,* 137 B.R. 165 (Bankr.W.D.Pa.1992); *Grimes v. Graue,* 158 B.R. 965, 969 (Bankr.S.D.Tex.1993).

█ 28 U.S.C. § 1334(a)-(b) grants original and exclusive jurisdiction to district courts in "all civil proceedings, arising under title 11, or arising in or related to cases under title 11." By virtue of referral by the District Court, the Bankruptcy Court has jurisdiction over cases that fall within these categories. *See* 28 U.S.C. § 157(a)-(b) (1999). Postconfirmation, a bankruptcy court retains jurisdiction over more than just ensuring that the plan becomes consummated. *See United States Trustee v. Gryphon at the Stone Mansion, Inc.,* 166 F.3d 552, 555 (3d Cir.1999). "So long as a chapter 11 case is 'open,' there does not appear to be any limit on the court's jurisdiction under 28 U.S.C. § 1334(b) with respect to civil proceedings arising under title 11 or arising in or related to cases under title 11." *In re Holly's, Inc.,* 172 B.R. 545, 554 (Bankr.W.D.Mich. 1994). Since it is undisputed that a final decree has not been ordered, the case remains open and the Bankruptcy Court retains jurisdiction under § 1334.

### 3.

█ A bankruptcy court retains jurisdiction for 180 days after the entry of the confirmation order to determine if an order of confirmation should be revoked. A plan may be revoked when a claimant proves that "such order was procured by fraud." 11 U.S.C. § 1144 (1999). The order confirming the First Amended Plan of Liquidation in the Tannen bankruptcy plan

was entered on February 19, 1998. SEBCO filed its request for leave to file a late-claim on August 1, 1998, within the 180 day deadline. At the minimum, the Bankruptcy Court had jurisdiction to determine whether the order was procured by fraud.

Although not raised by SEBCO, the Bankruptcy Court transcript leaves open the possibility that fraud had occurred:

> I'm not sympathetic to the debtors. They, in my estimation, were either were [sic] grossly negligent or did it intentionally not listing the claim. Because I can't believe that they didn't have any inkling that this claim existed, even if they thought it was resolved two years before. (Bankruptcy Court transcript, August 24, 1998, p. 10–11).

The Bankruptcy Court suggested that SEBCO should have been listed as a creditor: "I just have to believe that they [Tannen] knew that this [SEBCO's claim] existed. Whether they thought it had gone away, or whatever they thought, really isn't a basis for not listing a creditor in the case." (Bankruptcy Court hearing transcript, August 24, 1998, p.8). Accordingly, the Bankruptcy Court has jurisdiction under 11 U.S.C. § 1144 to determine whether the plan was fraudulently confirmed.

Since this Court finds that the Bankruptcy Court has jurisdiction, it is necessary to analyze whether SEBCO meets the requirements for filing a late claim.

### B.

█ One of the principal purposes of a bankruptcy proceeding is to quickly and efficiently settle the debtor's estate. *See Katchen v. Landy,* 382 U.S. 323, 328, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *Chemetron,* 72 F.3d at 346; *Bobal v. Troxell,* 1992 WL 6854 (Bankr.W.D.Pa.1992). In order to effectively administer a settlement, Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure sets a bar date after which claims will not be allowed unless there are sufficient grounds for the failure to file. *See Chemetron,* 72 F.3d at

346; *In re Vertientes,* 845 F.2d 57 (3d Cir.1988); *In re Best Products Co.,* 140 B.R. 353, 357 (Bankr.S.D.N.Y.1992). Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure provides that a failure to file a claim prior to the claims bar date must be the result of "excusable neglect". *See* Fed. Rules Bankr.Proc. § 9006(b)(1) (1999). Therefore, it is necessary to determine if SEBCO's reasons for failing to file a timely petition constitutes "excusable neglect."

The "excusable neglect" standard of Rule 9006(b)(1) was addressed by the United States Supreme Court in *Pioneer Inv. Serv. v. Brunswick Assoc.,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In *Pioneer,* the Court noted that there could be a number of reasons for a parties' failure to file a timely claim, ranging from an act of God to purposefully choosing to miss a deadline. *See Pioneer,* 507 U.S. at 388, 113 S.Ct. 1489. The Court ruled that the late filing of a claim would be permitted if it was caused by "inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *In re LAN Associates XIV, L.P.,* 193 B.R. 730, 736 (Bankr.D.N.J.1996) (citing *Pioneer,* 507 U.S. at 388, 113 S.Ct. 1489).

■■■ Accordingly, courts use a four-prong test to analyze the circumstances surrounding a late filing. Among the circumstances to be considered are: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) whether the movant acted in good faith; and (4) the reason for the delay, including whether it was within the reasonable control of the movant. *See id.* at 395, 113 S.Ct. 1489; *Chemetron,* 72 F.3d at 349; *In re LAN,* 193 B.R. at 737. The burden is on SEBCO to prove that its failure to file was the result of "excusable neglect." *See In re Brown,* 159 B.R. 710, 718 (Bankr.D.N.J.

1993); *In re Nutri Bevco,* 117 B.R. 771, 784 (Bankr.S.D.N.Y.1990).

■■■ In applying the *Pioneer* test, courts place the greatest weight on whether any prejudice to the other parties will occur by allowing a late claim. *See In re Brown,* 159 B.R. at 716. There is no "prejudice 'when all the parties can be placed in the same situation that they would have been in if the error had not occurred'." *In re Brown,* 159 B.R. at 716. In the case at bar, it can be reasonably concluded that allowing SEBCO to file a late claim would not result in prejudice to Tannen.

Allowing SEBCO's claim would not affect the other creditors in the proceeding. Under the bankruptcy plan, all the creditors were paid 100% of their claims with over $1.6 million going to the equity holders. Since SEBCO's damage claim is less than $700,000, the creditors will not be affected even if SEBCO is successful in pursuing its claim against the Debtor. If SEBCO's claim is found to be meritorious, the claim would be paid by compelling the equity holders, Uyar and his wife, to disgorge part of their distribution.

■■■ The second prong of the test analyzes the length of the delay and the impact on the judicial proceedings that a late claim would have. *See Pioneer,* 507 U.S. at 395, 113 S.Ct. 1489. SEBCO's claim would not disrupt the judicial process. Depending upon the outcome in state court, its impact on judicial proceedings may be minimal.[2] If it is necessary to rule on the claim, it will require a determination as to the validity of the contract and the appropriate damages. However, this is minimal in comparison to the injustice that would result from disallowing a valid claim because of the potential burden that may occur.

---

**2.** If SEBCO recovers from Uyar in its State Court proceeding, its claim against Tannen

might be dismissed.

SEBCO satisfies the third element of the *Pioneer* test by acting in good faith. The record shows that SEBCO filed its claim within one week after learning of Tannen's bankruptcy from Uyar's answer to their State claim. There is no evidence which suggests that SEBCO waited to file its claim for any other reason which would indicate bad faith.[3]

The fourth element of the *Pioneer* test analyzes the reason for the delay. SEBCO contends that the delay resulted from Tannen's failure to provide adequate notification of the bankruptcy proceedings. Tannen argues that it did not notify SEBCO directly because it was unaware of the lease. Since inadequate notice of a claims bar date is a reason for precluding the discharge of a late claim in a bankruptcy proceeding, if SEBCO was not adequately notified the delay should be excused and the late claim allowed. *See Chemetron,* 72 F.3d at 345.

■ To determine the adequacy of the notice given to a creditor, bankruptcy law has developed a distinction between known and unknown creditors. *See Chemetron,* 72 F.3d at 345; *In re Charter Co.,* 125 B.R. 650, 654 (M.D.Fla.1991). Creditors that are known require actual or formal notification of bankruptcy proceedings, i.e. service. *See Trans World Airlines, Inc. v. Trans World Airlines, Inc.,* 96 F.3d 687, 690 (3d Cir.1996); *Chemetron,* 72 F.3d at 345. Creditors that are unknown require only constructive notification that is reasonably calculated to apprize interested parties of the proceedings, such as publication in a widely circulated newspaper. *See id.* at 348–49.

■ An unknown creditor is one "whose interests are either conjectural or future or, although they could be discover-ed upon investigation, do not in due course of business come to knowledge [of the debtor]." *Chemetron,* 72 F.3d at 346 (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 317, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). A known creditor is one who is either known by the debtor or whose identity is reasonably ascertainable. *See Tulsa Professional Collection Serv., Inc. v. Pope,* 485 U.S. 478, 490, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988); *Chemetron,* 72 F.3d at 345.

It is undisputed that SEBCO did not receive the actual notice required for a known creditor. Even if SEBCO was an unknown creditor, it does not appear that Tannen adequately published notice of the claims bar date. However, these issues can be properly litigated before the Bankruptcy Court on remand.

## C.

■ Since the *Pioneer* test suggests that the late claim should be allowed, it is necessary to analyze whether a valid claim exists. The validity of SEBCO's claim turns on whether Uyar acted on his own behalf. If Uyar acted for himself, there is no claim in bankruptcy against Tannen. However, if Uyar was acting, or had apparent authority to act, as an agent of Tannen, SEBCO has a valid claim. This question is not properly before this Court as it should be decided in the first instance in bankruptcy. The District Court should not consider issues not presented to the Bankruptcy Court in the first instance. *See First Bank Investors' Trust v. Tarkio College,* 129 F.3d 471, 477 (8th Cir.1997). Accordingly, a decision can not be reached by this Court regarding the merits of the claim.

---

**3.** The only potential bad faith appears to stem from Uyar who is acting fast and loose with the judicial system. By claiming that he was acting on behalf of Tannen, Uyar attempts to establish an affirmative defense in the State court proceeding. Tannen, of course, takes the opposite tack in the bankruptcy. While normally there is nothing wrong with different parties asserting different positions in different forums, the identity of interests between Tannen and its owners, the Uyars, casts considerable doubt on the propriety of this conduct.

## V. CONCLUSION

For the reasons set forth above, this Court reverses the October 5, 1998, Order of the Bankruptcy Court and remands the matter for further proceedings consistent with this opinion.