**In re PREMIER MEMBERSHIP SERVICES, LLC, et al.,**
**Debtor.**

**Nos. 00–35053–BKC–SHF to 00–35056–BKC–SHF.**

United States Bankruptcy Court,
S.D. Florida.

April 18, 2002.

David L. Rosendorf, Kozyak, Tropin & Throckmorton, P.A., Miami, FL, for Hot-Socket, Inc.

Arthur H. Rice, Jason Slatkin, Rice, Robinson & Schiller, Miami, FL, for Debtor.

Patricia A. Redmond, Stearns, Weaver, Miller, Weissler Alhadeff & Sitterson PA, Miami, FL, for Creditors' Committee.

### ORDER GRANTING CREDITOR, HOT-SOCKET, INC.'S MOTION FOR ENLARGEMENT OF TIME TO FILE PROOF OF CLAIM

STEVEN H. FRIEDMAN, Bankruptcy Judge.

THIS CAUSE came on to be heard on December 18, 2001, upon the Motion for

Enlargement of Time to File Proof of Claim, filed by creditor HotSocket, Inc. ("HotSocket"). The motion seeks an enlargement of time to file a proof of claim following the passage of the claims bar date, pursuant to Fed.R.Bankr.P. 9006(b). The motion was opposed by Premier Membership Services LLC and the related debtors (collectively, "Debtors"). For the reasons stated below, the Motion for Enlargement of Time to File Proof of Claim is **granted**, and the claim of HotSocket shall be considered as a timely-filed claim, pursuant to Fed. R. Bankr.P. 9006(b).

At the hearing, HotSocket moved into evidence the court docket for this case; the November 24, 2000 Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors & Deadlines, including the attached mailing list; excerpts from the February 5, 2001 Disclosure Statement for Debtor's Plan of Reorganization; the solicitation package for the Third Amended Joint Chapter 11 Plan which was mailed to creditors on or about September 10, 2001; and the Proof of Claim of JWK, Inc., another creditor of the Debtors, asserting a claim for $12,500,000.

The Debtors moved into evidence an excerpt from the Debtors' schedules reflecting that HotSocket is scheduled as having a contingent, disputed, unliquidated claim for $2,744,497.80; a "Request for Notice" filed December 6, 2000 by Karla A. Lyon, Esq. and Troy Zander, Esq. of the Gray Cary Ware & Freidenrich LLP law firm as counsel for HotSocket; and a Notice of 2004 Examination Duces Tecum dated February 21, 2001 for a Rule 2004 examination of Promotion Marketing Systems, Inc. which was served on Karla Lyon. The Debtors also presented the testimony of Craig Young, Esq., who previously served as counsel to the Official Committee of Creditors Holding Unsecured Claims ("Committee") in this case.

## FINDINGS OF FACT

The Debtors filed voluntary Chapter 11 petitions in Delaware on September 29, 2000. On October 25, 2000, the cases were transferred to the U.S. Bankruptcy Court for the Southern District of Florida. On November 22, 2000, the Clerk of Court mailed a Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors & Deadlines ("Notice of Commencement"). The Notice of Commencement set the deadline for the filing of proofs of claims as March 15, 2001 (the "Claims Bar Date"). The Clerk of Court certified that her office mailed copies of the Notice of Commencement to each party reflected on the service list attached to the Notice of Commencement. HotSocket was not listed on the service list.

On December 5, 2000, the Debtors filed their schedules. The schedules list HotSocket as holding a contingent, disputed, unliquidated claim for $2,744,497.80. Pursuant to Local Rule 1007–2, a "Certification of Need to Supplement Matrix" and "Declaration Concerning Debtor's Schedules" must be submitted any time schedules are filed after the initial service matrix has been submitted. The Court's docket reflects that no certification or supplemental creditor matrix was filed by the Debtors when the schedules were filed, and that there was no supplemental mailing of the Claims Bar Date Notice after the schedules were filed.

On February 5, 2001, the Debtors filed a Disclosure Statement in connection with a Chapter 11 Plan filed January 26, 2001. The Disclosure Statement, at page 12, describes the relationship between the Debtors and HotSocket as follows:

Premier entered into an agreement with HotSocket, a company which creates Internet banner ads and e-mail campaigns. HotSocket charges a capped variable ac-

quisition fee per trial member as their "media fee." Unfortunately, the Debtors were unable to keep their account with HotSocket current and the business plan was not profitable. HotSocket now claims that the Debtors owe it approximately $2.7 million.

Thereafter on March 6, 2001, the court docket reflects that the Debtors filed amended creditor matrices; however, there is no evidence that a supplemental mailing of the Claims Bar Date Notice was served upon HotSocket or any other creditor. Based on the foregoing, HotSocket clearly was a known creditor, and there is no evidence that it ever received notice of the Claims Bar Date.

On August 22, 2001, the Debtors proposed a Third Amended Joint Plan and Disclosure Statement. The Third Amended Plan is effectively a "pot plan" in which all general unsecured creditors will share, on a pro rata basis, in certain funds available for distribution. The Disclosure Statement reflects that the Debtors' claims to the Heartland Reserve were contested, and that its value also was disputed and could range between $13 million and $17 million. The dispute relating to the Heartland Reserve ultimately was settled, after substantial discovery, with the entry of this Court's December 31, 2001 Agreed Order Granting Motion for Entry of an Order in Aid of Closing of the Settlement with Heartland Payment Systems, Inc. and Heartland Bank. The Plan effectively provides a floor and a cap on the distributions to be received by General Unsecured Creditors. The floor is provided by a guarantee from the Debtors' principal, Ira Smolev, by which he and affiliates are required to contribute sufficient funds to ensure a distribution of at least 33% to General Unsecured Creditors. Smolev also guaranteed that if the Heartland Reserve generated less than $5,250,000 for the General Unsecured Creditor Plan Fund, he would contribute the difference. The cap is imposed by a Plan provision which provides that General Unsecured Creditors will not receive more than a 40% dividend from the Heartland Reserve, even if there are excess funds available.

The Committee fully understood that a 40% distribution was not guaranteed under the Plan. Mr. Young testified that the Committee tried to negotiate a higher guarantee from Smolev, and was unable to do so: "We negotiated up to 33 cents. That was as far as we could go." (Transcript, P. 31 L. 6–12). Recognizing the 33% floor as the limit of the guarantee on distributions which the Committee could obtain, the Committee elected to support the Plan. (Transcript, P. 31 L. 13–16).

Mr. Young testified that the Committee made its decision to support the plan structure in the late spring or early summer of 2001. That support was formalized in September 2001 when Mr. Young, on behalf of the Committee, wrote a letter to creditors in support of the Third Amended Plan which was included in the solicitation package. (Transcript, P. 22 L. 17—P. 23 L. 8). At the time the Committee made its election to support the Plan, the total amount of the filed general unsecured claims, excluding regulatory claims or duplicates, was approximately $46 million. Of that amount, only approximately $1.5 million in claims were undisputed. Thus, there were approximately $44 million in disputed claims at the time the Committee made its election to support the Plan. (Transcript, P. 24 L. 22). This included the $12,500,000 claim of JWK, Inc. which was the subject of pending litigation. Between the Spring of 2001 and September 2001, only a small percentage of those disputed claims had been resolved. (Transcript, P. 24 L. 23—P. 25 L. 16). By the time of the confirmation hearing on Octo-

ber 11, 2001, there had still been no significant change in the status of the disputed claims. (Transcript, P. 25 L. 17–21).

Mr. Young testified that the Committee performed a "sensitivity analysis" of the prospective different results of possible claims objections, which indicated that the dividend for general unsecured creditors (assuming the recovery from the Heartland Reserve was $14 million) could range between 26% and 40%, with the Smolev guarantee ensuring a dividend of at least 33%. Thus, at the time the Committee elected to support the Plan, and at the time of confirmation, the possible range of results was anywhere between 33% and 40%. (Transcript, P. 32 L. 20—P. 33 L. 17).

### CONCLUSIONS OF LAW

■ Rule 9006(b) of the Federal Rules of Bankruptcy Procedure permits a bankruptcy court to enlarge the time for taking action (such as filing a proof of claim) after the time has expired where the failure to act timely was due to "excusable neglect." The Supreme Court has made clear that the determination of whether excusable neglect exists is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). These circumstances include "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

■ Perhaps even more importantly, it is a fundamental principle of due process that known creditors of a debtor are entitled to **actual notice** of a claims bar date before their claims can be extinguished. *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953). This is true even where the creditor may have actual knowledge of the pendency of the bankruptcy. *Id.* at 297. A creditor in a reorganization has a "right to assume" that he will receive all required notices before his claim will be forever barred. *Id.* Thus, "Courts have consistently ruled that when there is no notice of the claims bar date or of the confirmation hearing, a late claim is not barred." *In re Tannen Towers Acquisition Corp.*, 235 B.R. 748, 753 (D.N.J.1999).[1] *See also In re Unioil*, 948 F.2d 678 (10th Cir.1991) (explaining why actual knowledge of the case might bar a claim in a Chapter 7 case, but not in a Chapter 11 case, due to the different notice provisions).

■ There is no doubt that HotSocket was a known creditor of the Debtors. HotSocket was listed in the Debtors' schedules as holding a claim (albeit contingent, disputed and unliquidated) in excess of $2.7 million, and the first Plan and Disclosure Statement filed by the Debtors contains an extensive discussion of the claim and even contains particular provisions for its treatment. However, the record contains no evidence that HotSocket was given actual notice of the Claims Bar Date. To the contrary, HotSocket was not served with the Claims Bar Date Notice when that notice was mailed by the Court on November 22, 2000, and there was no supplemental mailing made either when the schedules were filed in December, 2000, or when the creditor matrices were

---

1. This Court has previously cited *Tannen Towers* with approval in *In re Intelligent Medical Imaging, Inc.*, 262 B.R. 142 (Bankr.S.D.Fla. 2001).

amended in March, 2000. Thus, even if HotSocket had knowledge of the bankruptcy proceedings, its claim can not be barred since there is no evidence that it received actual notice of the Claims Bar Date.

On this basis, this case is clearly distinguishable from this Court's ruling on a motion for enlargement of time to file late claim in *In re Intelligent Medical Imaging, Inc.,* 262 B.R. 142 (Bankr.S.D.Fla. 2001). In *Intelligent Medical,* by contrast, this Court noted that "There is no dispute as to the fact that [the creditor] received adequate notice of the filing deadlines." *Id.* at 146. By comparison, in *Tannen Towers* the District Court on appeal noted that "Since inadequate notice of a claims bar date is a reason for precluding the discharge of a late claim in a bankruptcy proceeding, if [the creditor] was not adequately notified the delay should be excused and the late claim allowed," and remanded in part for a determination of whether the creditor was a known creditor. *Tannen Towers,* 235 B.R. at 756.

Accordingly, since HotSocket was a known creditor and did not receive the formal notice of the Claims Bar Date required by basic principles of due process, its claim cannot be barred by its failure to file before the Claims Bar Date. The first factor identified by *Pioneer* is "the danger of prejudice to the debtor." The Debtors have not argued that *they* would be prejudiced by an enlargement of time for HotSocket to file a claim. Rather, the Debtors have relied exclusively on the alleged prejudice to unsecured creditors, as presented through the testimony of Mr. Young, the former counsel for the creditors' committee.

■ *Pioneer,* however, requires prejudice "to the debtor," not prejudice to other creditors. Most courts that have addressed the issue of prejudice conclude that the only relevant inquiry is whether the debtor, not other creditors, would be prejudiced as the result of permitting a late claim. Accordingly, in a liquidating plan there is very little danger of prejudice. *See, e.g., In re Eagle Bus Mfg., Inc.,* 62 F.3d 730 (5th Cir.1995); *In re Pappalardo,* 210 B.R. 634 (Bankr.S.D.Fla.1997); *In re Smith,* 200 B.R. 135 (Bankr. S.D.Miss.1996); *In re Sacred Heart Hospital of Norristown,* 186 B.R. 891 (Bankr. E.D.Pa.1995). In *Pappalardo,* a case in which the movant's $4 million claim was nearly equal to all of the other $4.7 million in unsecured claims combined, the Court noted "The only prejudice that *may* exist is to the unsecured creditors. However, the effect of a late filed known claim on unsecured creditors is not a relevant inquiry under *Pioneer." Pappalardo,* 210 B.R. at 645 (emphasis in original). Obviously, every late claim, if ultimately allowed, will dilute the recovery to other creditors. If such circumstances were to be recognized as constituting prejudice which could prevent enlargement of time, then it would be virtually impossible to ever grant relief to extend the time to file proofs of claim.

■ Even if the Court were to consider prejudice to other creditors, there is no evidence of substantial prejudice to other creditors which would preclude HotSocket from being granted an enlargement of time. At the time the Committee made its decision to support the basic plan structure in early 2001, there were approximately $44 million in disputed claims. Even when the Third Amended Plan was proposed in late August and when the Committee wrote its letter in support of the Plan in September, virtually no progress had been made in reducing the number of disputed claims. The addition of an additional disputed claim, representing a relatively small portion of the total of unsecured claims pending, can hardly be said to prejudice the Committee or unse-

cured creditors. This is particularly true in light of the plan structure *sub judice*, where regardless of the ultimate amount of allowed claims, General Unsecured Creditors are ensured of receiving at least 33% and no more than 40% on their claims. Allowing HotSocket's late-filed claim to be treated as a timely-filed claim will not interfere with this potential range of recovery, which the Committee recognized as the potential range when it elected to support the Plan. The Debtors presented no evidence that they or any other party would have done anything differently if HotSocket's claim had been asserted prior to the Claims Bar Date.

Accordingly, this Court's decision in *Intelligent Medical* is again distinguishable. In *Intelligent Medical*, the claim for which enlargement was sought was a priority tax claim which, under the Plan, would have been paid ahead of general unsecured creditors. Thus, allowance of the claim would have the effect of taking money out of the pot available to unsecured creditors, rather than merely affecting the relative percentage of the pot which each general unsecured creditor would receive. Here, since approximately $44 million in claims remain in flux and subject to dispute, it is impossible to determine even whether the allowance of HotSocket's claim, if treated as timely filed, will have *any* impact on the ultimate distribution to creditors.

■ As to the Pioneer factor of the length of the delay in filing the request to deem the claim as timely-filed and its impact upon the judicial proceeding, approximately six and one half months elapsed between the Claims Bar Date and HotSocket's Motion for Enlargement of Time. Cases construing *Pioneer* make clear that the mere length of delay alone is not in any way dispositive, except to the extent that the delay affects judicial proceedings. *See, e.g., Sacred Heart Hospital,* 186 B.R.

at 895 (even a long and logically unjustified delay which has no significant impact on the debtor's case should often be deemed excusable). Courts in this jurisdiction have permitted claims to be filed even seven months after the bar date, where the late filing caused no delay in judicial proceedings. *Pappalardo,* 210 B.R. at 646. Other courts have permitted late claims as much as two years after the bar date where there was no effect on judicial administration. *See, e.g., In re Beltrami Enterprises, Inc.,* 178 B.R. 389 (Bankr. M.D.Pa.1994).

Here, as in *Pappalardo,* the length of the delay will have no impact on judicial proceedings. The late filing of the claim did not in any way delay or interfere with confirmation of the Debtors' Plan, and as of the filing of the Motion there still remained substantial matters to be resolved in this case post-confirmation, including claim objections and the litigation of sizable disputed claims. No modification of the confirmed Plan is necessary because the Plan makes provision for the ultimate allowance of disputed claims. Thus, the Court finds that the granting of the motion for enlargement will not result in any significant disruption to the administration of the Debtors' bankruptcy case. *Compare Pappalardo,* 210 B.R. at 646.

Undoubtedly, both the Debtors and HotSocket share some responsibility for the delay in filing a claim. HotSocket was a known creditor, but the Debtors failed to satisfy their obligations, under basic principles of due process as well as the Federal Rules of Bankruptcy Procedure and Local Rules of this Court, to give HotSocket actual notice of the Claims Bar Date. HotSocket, on the other hand, was at least generally aware of the bankruptcy case, as evidenced by the fact that its counsel filed a notice of appearance and engaged in negotiations with the Debtors regarding

the treatment of its claim under the first Plan proposed by the Debtors. However, these negotiations and the Disclosure Statement filed February 5, 2001, which specifically acknowledged HotSocket's assertion of a claim and provided for its treatment, could have led HotSocket to believe that it did not need to file a claim, particularly where it did not receive the Claims Bar Date Notice.[2]

In such situations, courts routinely find that the movant's partial responsibility for the delay cannot preclude an enlargement of time. *See, e.g., O'Brien Environmental Energy,* 188 F.3d 116, 128–29 (where delay was at least in part as a result of lack of notice of the deadline, creditor's carelessness would not preclude claim). Indeed, more than one court has noted that "[W]hen both the debtor and creditor are guilty of significant negligence in the handling of a claim and the debtor is aware of a creditor's claim, then ... 'a tie goes to the [creditor].'" *Farley, Inc. v. Ohio Bureau of Workers' Compensation,* 213 B.R. 138, 143 (N.D.Ill.1997), citing *In re Dartmoor Homes, Inc.,* 175 B.R. 659 (Bankr. N.D.Ill.1994). In the absence of any evidence of a deliberate or tactical delay by HotSocket, the Court will not preclude HotSocket from asserting its claim, particularly in light of the constitutional restrictions on extinguishing a claim without providing actual notice of the Claims Bar Date described above. No question has been raised as to the good faith of the movant, HotSocket.

For the foregoing reasons, the Court concludes that under the principles of *City*

*of New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953), the claim of HotSocket, as a known creditor entitled to actual notice of the Claims Bar Date, cannot be barred. Moreover, based on the evidence presented to the Court and the record in this case, the Court shall grant HotSocket's Motion for Enlargement of Time to File Proof of Claim pursuant to Fed.R.Bankr.P. 9006(b).

Therefore, it is—

**ORDERED** as follows:

1. HotSocket's Motion for Enlargement of Time to File Proof of Claim is **granted**.

2. HotSocket's Proof of Claim shall be treated as **timely filed**.

3. This order is without prejudice to any other objections of the Debtors to HotSocket's Proof of Claim.

---

2. The Disclosure Statement, which specifically acknowledged that "HotSocket now claims that the Debtors owe it approximately $2.7 million," can be characterized as an informal proof of claim on behalf of HotSocket, in that it explicitly states the nature and amount of the claim and the fact that the creditor assets that it is owed. *See* 11 U.S.C. § 501(c); *In re*

*Charter Co.,* 876 F.2d 861 (11th Cir.1989) (informal claim is a document which apprises the court of the existence, nature and amount of claim and makes clear claimant's intention to hold the debtor liable); *In re Holm,* 931 F.2d 620 (9th Cir.1991) (creditor's disclosure statement could constitute informal proof of claim).