**In re: BICOASTAL CORPORATION, d/b/a Simuflite, f/k/a The Singer Company, Debtor.**

**Bankruptcy No. 89–8191–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 15, 1992.

Harley E. Riedel, Tampa, Fla., Donald E. Engle, St. Paul, Minn., for debtor.

Thomas M. Donnelly, San Francisco, Cal., Lynn Hinson, Orlando, Fla., for claimant.

William Goldman, New York City, for Creditors' Committee.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS is a confirmed Chapter 11 case and the matters under consideration are Objections to Claims and Amended Claims of Citation Entities (Citation) filed by Bicoastal Corporation (Debtor). In its Objections, the Debtor contends that the Claims filed by Citation were filed late, after the expiration of the bar date fixed by the Court; that the claims are facially defective, in any event; and that the Amended Claims of Citation are contingent and unliquidated, and, thus cannot be allowed by virtue of § 502(c) of the Bankruptcy Code unless the contingency is removed and the claims are liquidated or at least estimated, if possible. In addition, it is the Debtor's contention that these claims cannot be recognized as a proper cost of administration pursuant to § 503(a) of the Bankruptcy Code. In due course, both the Debtor and Citation filed their respective Motions for Summary Judgment, both contending that there are no genuine issues of material fact and that each of the parties is entitled to the relief sought as a matter of law. The undisputed facts as they appear in the record are as follows.

The Debtor's predecessor-in-interest, The Singer Company (Singer), was the owner of real property a decade prior to the Debtor's Chapter 11 case, located at 2350 Washington Avenue in San Leandro, California. Singer also conducted business at 2481 Washington Avenue and 2450 Washington Avenue, San Leandro, California. In June, 1977, Citation bought a portion of this real property in San Leandro, California from the Debtor.

In the mid–1970's the State of California began an investigation of ground water contamination in and around the vicinity of the former Singer property. It appears that on December 12, 1988, the California Department of Health Services (CDHS) contacted the Debtor by letter and inquired about the well and ground water conditions of the old Singer site.

On November 30, 1989, this Court entered an Order establishing December 30, 1989 as the bar date by which creditors were required to file proofs of claim against the Debtor. The Order further provided that in accordance with Bankruptcy Rule 2002(a)(8), (i) and (k), the Debtor shall provide at least twenty (20) days notice of the bar date by first class regular mail to all entities listed on the Debtor's Schedules. Further, the Order provided that the Debtor shall cause a copy of the Notice to be published on one occasion at least twenty (20) days prior to the bar date in the national editions of the *Wall Street Journal* and *The New York Times*, together with local newspapers in cities where the Debtor maintained a business location. Thereafter, this Court extended the bar date to January 31, 1990. It is without dispute that the Debtor did publish the bar date for filing proofs of claims in the *Wall Street Journal*, the *Los Angeles Times*,

and in *The New York Times*, and also some local publications although not in the county where the property in question is located.

Citation concedes that it learned of the Debtor's Chapter 11 case in late November or December, 1989 prior to the expiration of the bar date. However, Citation contends that it first realized that it had a possible claim against the Debtor based on the alleged contamination of the San Leandro property on May 28, 1991, or after the bar date, when the CDHS served on Citation an order requiring investigatory and remedial work concerning the alleged contamination of the San Leandro property. On June 21, 1991, Citation filed a Proof of Claim for an "as yet uncertain" amount of money. On August 14, 1992, Citation filed an Amended Proof of Claim which added Transamerica Title Insurance Company to the Claim and incorporated the original Claim. On January 9, 1992, the Debtor filed its Objection to Citation's claim. On March 2, 1992, Citation filed its Second Amended Proof of Claim incorporating the claim of S.C.S., a former general partner of Citation, adding Cheney Corporation and Citation Builders and incorporating the original Claim.

The first prong of the Citation Claim asserts a claim for administrative expenses, pursuant to § 503 of the Bankruptcy Code, in an unspecified amount, based upon alleged expenses which might be incurred by Citation in the future for clean-up costs of the San Leandro site.

■ Obviously, whether Citation is entitled to the allowance of an administrative claim is a threshold issue, as the bar date fixed by the Court did not apply to requests for allowance of an administrative expenses. In this connection, it should be noted at the outset that the "request" by Citation is procedurally improper. While § 503 of the Bankruptcy Code refers to "requests" for administrative expenses, F.R.B.P. 9013 provides that request for relief must be a motion, unless the term "application" is used, except when the proceeding is governed by Part VII of the Rules. A Motion for allowance of an ad-ministrative expense is therefore the only proper vehicle to assert such a claim, and not by filing a proof of claim.

■ The allowance of administrative expenses is governed by § 503 which provides as follows:

§ 503. Allowance of administrative expenses

(b) After notice and a hearing, there shall be allowed administrative expenses ... including

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

It is generally recognized, that if the release or discharge of hazardous substances occurs post-petition, in the operation of a business by the debtor-in-possession, the clean-up costs incurred are deemed to be costs of "preserving the estate" and may be properly recognized as an administrative expense under § 503(b). *In re Security Gas & Oil, Inc.*, 70 B.R. 786 (Bankr.N.D.Cal.1987); *In re Hemingway Transport, Inc.*, 73 B.R. 494 (Bankr. D.Mass.1987); *Pierce Coal Construction, Inc.* 65 B.R. 521 (Bankr.N.D.W.V.1986). Administrative priority has been granted to post-petition clean-up costs incurred to remedy pre-petition contamination where the debtor-in-possession had a property interest in the site at or after the time of the filing of the petition. *In re Chateaugay Corporation*, 944 F.2d 997 (2d Cir.1991); *In re Wall Tube and Metal Products Company*, 831 F.2d 118 (6th Cir.1987); *In re Hemingway Transport, Inc., supra*. However, it is equally true and it is well established that if on the date of the commencement of the case the debtor no longer had any cognizable interest in the property claimed to have been contaminated, the claim is simply a pre-petition claim and as such, is governed by the bar date. *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985).

It is undisputed that the Debtor conveyed the San Leandro property to Citation in 1977 and has had no cognizable ownership interest in the subject property since

1977. Thus, it follows that under the authorities noted earlier, Citation would not be entitled to an administrative expense, but only a pre-petition, unsecured claim, if any.

Having concluded that Citation is not entitled to administrative priority, this leaves for consideration the timeliness of Citation's Proof of Claim. Bankruptcy Rule 3003(c)(3) provides that the Court may extend the time within which proofs of claim may be filed for cause shown. Further, Bankruptcy Rule 9006(b)(1) provides that when an act is required to be done within a specified time, the Court may enlarge the time period for cause shown on Motion made after the time period expired if the failure to act was due to excusable neglect.

Moreover, it appears that Citation has yet to incur any clean-up expenses. So far, according to the affidavits filed by Citation in support of its Motion, Citation has incurred a total of $408,500.00 in expenses, although none for clean up of the site, but only for consulting and investigation expenses, and for attorney's fees incurred in challenging the claim of the CDHS and in opposing the Debtor's Objection to its Claim in this Court. Clearly, none of these expenses are related to remedying the alleged contaminated condition of the San Leandro property. Instead, they are simply related to protecting the interests of Citation.

■ The facts as presented do not support the claim of excusable neglect. Citation concedes that it had knowledge of the pendency of the Debtor's Chapter 11 case at least one month before the bar date. This admitted knowledge of the Chapter 11 case defeats Citation's argument that the Debtor failed to provide sufficient notice of the bar date to Citation through publication. This contention is based on the undisputed fact that the notice of the bar date was only published in the *Los Angeles Times* and not in the area where the subject property is located. Thus, there is no doubt that Citation could have easily ascertained the bar date and filed a proof of claim prior to the expiration of the period

fixed or contacted the Court via telephone or letter shortly after learning of the bankruptcy, and inquired about the bar date. *See In re Sasson Jeans, Inc.*, 96 B.R. 457 (Bankr.S.D.N.Y.1989); *In re Starkey* 1 CBC 138, 142 (W.D.Wis.1973) (extension will not be granted where delay could have been prevented by diligence). Citation failed to exercise a modicum of diligence to protect its interest and is hard pressed to present a persuasive argument based on excusable neglect.

■ Although Citation claims it did not know it had a claim against the Debtor until May of 1991, Citation admits it had knowledge of contamination on the San Leandro property in April of 1990, a full year earlier, and only months after the expiration of the bar date. Knowledge of the contamination certainly should have alerted Citation to a possible claim and that it would be the potentially responsible entity for the contamination. Had Citation filed a Motion To Extend the Bar Date as soon as it learned of the contamination, this Court certainly would have found cause to extend the bar date. Based on the foregoing, this Court is satisfied that Citation failed to establish excusable neglect. Thus, this claim is time barred and cannot be allowed.

■ It is without serious dispute that there might have been slight, if any, prejudice to the Debtor to grant a Motion to file a late claim soon after the bar date passed, and prior to the confirmation of the Debtor's Plan of Reorganization. This is clearly not the case any longer because this Chapter 11 case has been pending for three years and after extensive litigation and negotiations, the Debtor resolved all of its major problems and proposed a Plan of Reorganization which was confirmed by this Court. To permit this claim to stand at this late stage of the game, especially a claim which cannot be allowed pursuant to § 502(c) because the claims are unliquidated and contingent and must be estimated or liquidated, would not only present a very substantial and detrimental delay to the creditors who timely filed their claims, but also would most likely destroy the Debtor's

ability to achieve rehabilitation under this Chapter.

Based upon the foregoing, this Court is satisfied that the Debtor's Objections to the Citation Claim are well taken and should be sustained.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Debtor's Motion for Summary Judgment on Objections to Proofs of Claim filed by Citation Entities is hereby granted. The Objections stand as sustained, and the claims disallowed.

DONE AND ORDERED.