## In re LYKES BROS. STEAMSHIP CO., INC., Debtor.

**Bankruptcy No. 95–10453–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 27, 1997.

Harley E. Riedel, Tampa, FL, for Debtor.

Jeremy Harwood, New York City, for Movant.

James Post, Jacksonville, FL, for Movant.

### ORDER ON MOTION OF NEPOMUK SHIPPING CO., LTD. FOR STAY OF PROCEEDINGS PENDING APPEAL

ALEXANDER L. PASKAY, Chief Judge.

This is a Chapter 11 case in which a hearing to consider confirmation of the Debtor's Amended and Restated Plan of Reorganization ("Plan") is scheduled for April 2, 1997. The motion under consideration is the Motion of Nepomuk Shipping Co., Ltd. for Stay of Proceedings Pending Appeal ("Motion for Stay"), by which Nepomuk Shipping Co. Ltd. ("Nepomuk") seeks a stay of all proceedings pending the resolution of Nepomuk's appeal of an Order entered by this Court on October 31, 1996, which denied the administrative status of Nepomuk's claim.

Although not clearly spelled out, the precise relief sought by Nepomuk in its Motion for Stay is a stay of the confirmation process until the District Court decides the appeal. At the hearing on the Motion for Stay which took place five days prior to the scheduled confirmation hearing, counsel for Nepomuk indirectly indicated that Nepomuk would be satisfied if this Court issues a mandatory injunction either (1) directing the Debtor to revise the Plan which is now targeted for confirmation; or (2) if the Debtor's Plan is confirmed, prohibiting payment of administrative expenses pending the resolution of · the appeal. The facts relevant to the resolution of the Motion for Stay can be summarized as follows:

On or about June 16, 1995, and prior to the commencement of this case, the Debtor chartered the vessel M/S Frederick Lykes, owned by Nepomuk, an entity organized and existing under the laws of the Republic of Cyprus. The vessel in question, which was under head charter to the Debtor from Nepomuk was subchartered by the Debtor to Compania Sud Americana de Vapores ("CSAV"). Prior to the commencement of this case, CSAV operated the vessel as the M/S Auguste Schulte. In order to help CSAV assume the Debtor's position as the head charterer, the Debtor agreed to seek this Court's approval of the Debtor's assumption and assignment of the head charter to CSAV. Of course, the Debtor could only obtain court approval of its assumption and assignment of the head charter to CSAV with the consent of Nepomuk. In pursuance of this goal, the Debtor, Nepomuk and CSAV entered into an Assignment Agreement.

On October 24, 1995, the Debtor filed a Motion for authority to assume and assign its head charter pursuant to the Assignment Agreement with Nepomuk. The Motion provided, *inter alia*, in paragraph 6 that Nepomuk having consented to the assignment of the head charter to CSAV, the proposed assumption and assignment satisfied all conditions precedent to assumption of an execu-

tory contract as required by 11 U.S.C. § 365(b). This Section requires that before a debtor may assume an executory contract, the debtor must promptly cure or assure a prompt cure of any defaults under the contract sought to be assumed.

■ It is without dispute that prior to the hearing scheduled to consider the Debtor's motion to assume and assign the head charter, Nepomuk never asserted that the Debtor was in default under the head charter. Even after the hearing, Nepomuk never asserted any default or demanded a prompt cure. It was not until one year later on September 16, 1996, that Nepomuk moved for a determination and payment of administrative expenses. If prior to the assumption of any executory contract there is no allegation of any existing default, the order approving the contract determines that no default exists. See In re Diamond Manufacturing Co., Inc., 164 B.R. 189 (Bankr.S.D.Ga.1994).

Under the terms of the approved assumption and assignment, CSAV assumed all postpetition obligations of the head charter assigned to it by the Debtor. Thus, under 11 U.S.C. § 365(k), the Debtor was relieved of any further liability under the assigned head charter. The Order approving the assumption and assignment provides that Nepomuk had the right within thirty days of the date of entry of the Order to file a "proof of claim" for damages. The Order further provides that CSAV might seek an allowance for an administrative expense if it had one, in the event that the Order which approved the assumption and the assignment was vacated.

■ On December 11, 1995, Nepomuk filed Proof of Claim No. 212, asserting a "secured claim." On August 4, 1996, Nepomuk filed an amended claim, Proof of Claim No. 1785. Neither proof of claim was served upon counsel for the Official Committee of Unsecured Creditors. Neither proof of claim, nor the supporting documentation attached to the claims, made any mention that the proofs of claim were intended to be claims for administrative expenses. Each proof of claim form on its face contained the following notation:

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" of payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Moreover, the proof of claim form, in boxes 4 and 5, specify that the claim must be asserted in the amount of the claim that was due and owing at the time the case was filed. A proof of claim is not a mechanism by which an administrative claim should be asserted. Rather, a request for payment of administrative expense should be separately filed. The filing of a proof of claim is not a substitute for such a request. See In re First Century Corp., 166 B.R. 47 (Bankr.M.D.Pa.1994).

More than nine months after Nepomuk filed its claims, and almost six months after M/S Auguste Schulte redelivered the vessel, Nepomuk filed its Motion For Determination And Payment of Administrative Claim ("Application for Administrative Expenses"). In its Application for Administrative Expenses, Nepomuk requested that its "secured claim" be allowed and paid as an unsecured administrative expense pursuant to 11 U.S.C. § 503. After a hearing, on October 31, 1996, this Court entered an Order denying the Application for Administrative Expenses. In reaching its decision, this Court found that the claim could not be allowed because nothing was in the record which warranted the finding that Nepomuk ever acquired a lien on any properties of the estate. The Court further found that the claim cannot be allowed as a cost of administration under 11 U.S.C. § 503 because the claim is based upon events, conduct and occurrences, all of which occurred prior to the commencement of the Chapter 11 case. It is the appeal of this Order which is now pending before the District Court by virtue of the Notice of Appeal filed by Nepomuk on November 6, 1996.

Nepomuk has actively participated in the pending appeal by filing briefs. Yet, Nepomuk did not file its Motion for Stay until March 11, 1997, or about three weeks prior to the scheduled confirmation hearing.

As noted earlier, the Motion for Stay in the last analysis seeks an injunction, which request is procedurally improper because the

procedure to obtain injunctive relief by virtue of F.R.B.P. 7001(7) requires an adversary proceeding. To the extent the Motion for Stay seeks a stay of proceedings, it is really nothing more than an attempt to suspend the confirmation process. In the Motion for Stay, Nepomuk contends that the Debtor's Plan fails to make any provision for the payment of its administrative claim. Nepomuk contends that this Court should not confirm the Plan unless the Plan includes a provision for the payment of its administrative claim; and that the amount of Nepomuk's claim, $1.5 Million, should be placed in escrow pending resolution of the appeal. Evidently, this is a confirmation issue which Nepomuk already raised by its objection to confirmation and which will be considered at the confirmation hearing.

■ Be that as it may, it is clear that the Motion for Stay has been filed pursuant to F.R.B.P. 8005 and which, therefore, must be tested in light of the well established standards succinctly stated in *In re Charter Co.,* 72 B.R. 70, 71–72 (Bankr.M.D.Fla.1987). *Charter* states the proposition that a party seeking a stay pending appeal must demonstrate:

(1) the likelihood of success on the merits of the appeal;

(2) that the movant will suffer irreparable injury if the stay is denied;

(3) that no substantial harm will be suffered by the other parties if the stay is granted; and

(4) that no harm to the public interest, if it is implicated, will be caused by granting the stay.

*See also In re First South Savings Ass'n.,* 820 F.2d 700 (5th Cir.1987); *Green Point Bank v. Treston,* 188 B.R. 9, 11 (S.D.N.Y. 1995); *In re Advanced Mining Systems, Inc.,* 173 B.R. 467, 468 (S.D.N.Y.1994); *In re Sphere Holding Corp.,* 162 B.R. 639, 642 (E.D.N.Y.1994); *In re Dale Mabry Properties, Ltd.,* 149 B.R. 209 (M.D.Fla.1992); *In re Bob Hamilton Real Estate, Inc.,* 164 B.R. 703 (Bankr.M.D.Fla.1994).

The Court in *Charter, supra,* also held that the burden is on the party who seeks a stay under F.R.B.P. 8005 and that the party seeking the stay must establish all of the elements set forth above.

■ Nepomuk, realizing that it may not be able to meet all of the elements, nevertheless contends that it still may obtain the relief it is seeking by a strong showing that it will likely succeed on appeal. This proposition urged by Nepomuk is not supported by existing law. The First Circuit Court of Appeals in *In re Power Recovery Systems, Inc.,* 950 F.2d 798 (1st Cir.1991) stated:

To satisfy the standard for the issuance of a stay, the movant must establish that there is a strong likelihood of success on the merits of its appeal; that he will suffer irreparable harm if a stay is not granted; that the harm will outweigh any harm opposing parties will suffer if a stay is granted; and that the public interest would be furthered by the granting of a stay. (citation omitted). *Failure to meet even one of the criteria justifies denial. Id.* (emphasis added).

*Id.* at 804, n. 31.

Courts have also held that the moving party must show "satisfactory evidence on all four criteria." *In re Charles & Lillian Brown's Hotel, Inc.,* 93 B.R. 49, 53 (Bankr.S.D.N.Y. 1988). The "failure to satisfy one prong of the standard for granting a stay pending appeal dooms his motion." *Green Point v. Treston,* 188 B.R. 9, 12 (S.D.N.Y.1995)

■ In applying the four elements governing stays pending appeal, the following observations are in order:

### IRREPARABLE INJURY TO THE MOVANT

In support of this requirement, Nepomuk contends, which contention is not challenged by the Debtor, that in the event Nepomuk prevails on appeal and the Plan is confirmed and consummated, the appeal will be moot. This is so because there will be no funds to pay the amount of Nepomuk's administrative claim if on appeal the administrative claim is found to be valid by District Court. According to Nepomuk, unless the stay is granted, Nepomuk will be denied any effective relief and left without remedy.

In this unusual case, it is now clear that after the payments, albeit not in full, of the super-priority claim of the Morgan Bank Group based upon 11 U.S.C. § 507(b) and a super-priority claim granted to Canadian Pacific Limited ("Canadian Pacific"), or its subsidiary Grouse (Bermuda) Limited ("Grouse") for funds advanced to the Debtor postpetition, there will be no funds remaining to pay the administrative claims, except to the reduced extent agreed upon by the holders of such claims. Moreover, if the Plan fails to obtain confirmation and the case is converted to a Chapter 7 case, there is no question that Nepomuk's claim will not be satisfied, even if Nepomuk prevails on appeal. According to the Affidavit of the Chief Executive Officer of the Debtor, the Debtor has no free and clear assets of any significant value. All vessels owned by the Debtor are encumbered by senior liens securing amounts well in excess of the value of the vessels. The other significant asset of the Debtor, its accounts receivable, is also encumbered by a security interest of the Morgan Bank Group, which interest secures a debt in excess of $35 million. Lykes Brothers, Inc., not the Debtor, holds a preferred ship mortgage on the vessels, securing an $11 million debt, which is junior to the preferred ship mortgages held by Mitsui and Mitsubishi Shipyards. Lykes Brothers, Inc., acknowledged that its secured claim fails entirely due to the lack of value in its collateral and that it has only an unsecured claim.

Based on the foregoing, this Court is satisfied that regardless of whether or not Nepomuk prevails on appeal, Nepomuk still will be unable to obtain satisfaction of its claim. Thus, Nepomuk will not suffer irreparable harm if its Motion for Stay is denied.

## HARM TO THE DEBTOR AND HIS ESTATE

Nepomuk did not and cannot offer any meaningful evidence to negate this element. The conclusion is inescapable based on the entire record of this Chapter 11 case. As this Court stated initially upon considering Morgan Bank Group's Motion to Dismiss and Convert:

The alternative suggestion by the Banks, i.e. conversion, would cause nothing but utter chaos and would destroy forthwith the going concern value of the Debtor's business which forms the core of the entire reorganization process.

The record leaves no doubt that if the Debtor is unable to obtain confirmation, only two alternatives will remain. One alternative is to dismiss the Chapter 11 case. The other is to convert the Chapter 11 case to a Chapter 7 liquidation case.

If the Chapter 11 case is dismissed, all vessels on the high seas most likely will be arrested and seized and their cargo, which is owned by third parties, will be in great jeopardy. Obviously, the owners of the cargo will not pay the Debtor for the cost of transportation. In addition, all contracts with the Maritime Administration will be lost. If, on the other hand, the Chapter 11 is converted to a Chapter 7 case, the trustee will be faced with an utter nightmare as he tries to secure the vessels, make arrangements to complete the voyages in progress, and pay the crew and all staff on land assisting in the transportation of the cargo to its ultimate destination. This Debtor has reached the terminal stage by uncontrollable hemorrhaging to such an extent that unless the Asset Purchase Agreement with Canadian Pacific and or its wholly owned subsidiary Grouse is concluded, this Chapter 11 is doomed. This is so because the Asset Purchase Agreement is the heart and the sole foundation of the Plan.

This record leaves no doubt that this reorganization process is time sensitive and can only be confirmed by the closing of the Asset Purchase Agreement. In addition, the Debtor's authority to use cash collateral will expire on April 2, 1997, contemporaneously with the confirmation hearing. Thus, it is clear that if there is a delay, Canadian Pacific will walk away, clearly a disaster for all creditors and thousands of employees. The going concern value of the Debtor will be lost forever. The foregoing leaves no doubt that if the stay is granted, the Debtor indeed will suffer irreparable injury.

## THE PUBLIC INTEREST

As noted earlier if this Chapter 11 case aborts, it will result in the loss of jobs for more than one thousand current employees. Moreover, the Debtor's survival is in the national interest of the United States. On October 8, 1996, Congress enacted the Maritime Security Act of 1996, Public Law 104–239 (H.R. 350). This Act required the Secretary of Transportation to establish a fleet of militarily useful, privately owned vessels to meet national defense and other security requirements and to maintain the United States' presence in international shipping. *Id.* at Sec. 3651(a). All six vessels in the Debtor's North Atlantic service, including three of the four Pacific class vessels, have been certified by the United States Maritime Administration to be of great importance to national defense and five of them have been accepted into the Maritime Security Program. The Debtor is one of the last U.S. flag carriers engaged in international commerce. Between 1970 and the present, sixteen U.S. flag carriers have gone out of business and presently less than three percent of the world's cargo is carried by U.S. vessels.

From the foregoing, it is apparent that salvaging the Debtor and assisting the Debtor in reorganizing under Chapter 11 is of extremely great public interest.

## SUCCESS ON THE MERITS

■ Although a great deal of effort is devoted by counsel for Nepomuk to show that Nepomuk will likely succeed on the merits on appeal, in light of the foregoing findings, this Court is satisfied that since Nepomuk failed to establish the three requisite elements established by *Charter, supra,* it is unnecessary to discuss in detail the merits of the appeal. Suffice it to say, however, the denial of an administrative claim can be reversed only for abuse of discretion. *See In re Dant & Russell, Inc.,* 853 F.2d 700, 707 (9th Cir.1988). The difficulty in establishing that this Court abused its discretion is belied by the fact that the Order approving the assumption and assignment of the head charter specifically stated that all conditions precedent required for assumption and assignment of an executory contract as set forth in 11 U.S.C. § 365(b) have been met. Clearly, if anyone had known that Nepomuk is asserting a default and an administrative claim for $1.5 million, there would be hardly any doubt that the Debtor would not have sought an assumption and assignment to CSAV of the head charter. This is so because due to its precarious cash position, the Debtor could not have promptly cured or assured a prompt cure of the claimed default. Moreover, it is clear that under these conditions, it would be totally senseless to assume a head charter involving a subcharter to CSAV from which the Debtor would receive no monetary benefits whatsoever.

The fact that Nepomuk filed two proofs of claim, as noted above, is certainly an unacceptable substitute for asserting an administrative claim pursuant to 11 U.S.C. § 503(a). *See In re Bicoastal Corp.,* 147 B.R. 258, 260 (Bankr.M.D.Fla.1992); *Diamond Mfg. Co., supra; First Century Corp., supra;* see also 4 Collier on Bankruptcy, 503.02(2) (15th Ed.1996). Most importantly, Local Rule 2.20 expressly provides that an assertion of an administrative expense cannot be accomplished by filing a proof of claim and requires the filing of an application for the allowance of administrative expenses within thirty days of the occurrence of the last event giving rise to the claim. Although it would be ill behooved for this Court to prejudge the merits of the appeal and the reviewing Court might view the foregoing differently, nonetheless, this Court is satisfied that under the facts of this case and the controlling authorities, Nepomuk's chances of prevailing on appeal appear unlikely.

In sum, this Court is satisfied that Nepomuk failed to carry its burden to establish the requirements for a stay, as set forth in *Charter, supra.*

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion of Nepomuk Shipping Co., Ltd. For Stay of Proceedings In This Chapter 11 Case Pending Appeal be, and the same is hereby denied.