### In re INTELLIGENT MEDICAL IMAGING, INC., Debtor.

### No. 99–35847–BKC–SHF.

United States Bankruptcy Court, S.D. Florida.

April 24, 2001.

Leslie Gern Cloyd, Attorney at Law, Berger, Davis & Singerman, Fort Lauderdale, FL, for Debtor.

Brian T. Hanlon, The Palm Beach County Tax Collector, Office of Tax Collector, West Palm Beach, FL, for John K. Clark.

Robert P. Charbonneau, Kluger, Peretz, Kaplan & Berlin, P.A., Miami, FL, for Creditors' Committee.

### ORDER DENYING PALM BEACH COUNTY TAX COLLECTOR'S MOTION FOR ALLOWANCE OF LATE–FILED CLAIM AND DENYING PALM BEACH COUNTY TAX COLLECTOR'S MOTION TO ALLOW CLAIM AND COMPEL PAYMENT TO CLASS 2 SECURED TAX CREDITOR

STEVEN H. FRIEDMAN, Bankruptcy Judge.

This matter came on for hearing on December 7, 2000 for consideration of Palm Beach County Tax Collector's Motion for Allowance of Late–Filed Claim and Palm Beach County Tax Collector's Motion to Allow Claim and Compel Payment to Class 2 Secured Tax Creditor. On November 29, 1999, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code. In its schedules, the Debtor listed the claim of John K. Clark ("Clark"), the Palm Beach County Tax Collector, for "intangible taxes" for the year 1998 as an unsecured priority claim in the amount of $35,558.17. The claim was not listed in the Debtor's schedules as being disputed, contingent, or unliquidated. According to Clark, the Debtor owes tangible personal property taxes in the amount of $92,188.76 for years 1998 and 1999 and in the amount of $34,822.18 for the year 2000, which taxes are secured by a statutory lien as provided by Fla. Stat. Ch. 197.122(1) and 192.053. Clark contends that his late-filed claim should be deemed timely and allowed, because (1) the delay in filing was the result of his attorney's oversight in calendaring the deadline, and (2) the allowance of the claim causes no prejudice to the Debtor, as the Debtor was fully aware of its tax obligations. Having considered the motions and the argument of counsel, and for the reasons set forth below, the Court denies Clark's motions.

Intelligent Medical Imaging, Inc., the Debtor, was founded in June of 1989. The Debtor was in the business of developing medical instruments, by employing cutting edge visual artificial intelligence, digital image analysis and advanced robotic technology. The Debtor succeeded in developing the planned products and gaining FDA clearance; however, due to corporate bureaucracy and adverse medical industry dynamics such as mergers and downsizing, the Debtor was unable to successfully achieve widespread market penetration through a distribution agreement with an industry leader. While marketing its products in the absence of an agreement with an industry leader and completing the development of its product line, the Debtor depleted its cash reserves and accumulated debt, which forced the Debtor to file a chapter 11 petition on November 29, 1999.

On December 29, 1999, the Debtor filed its schedules. The Debtor's schedules reflect secured claims, some of which are unliquidated and disputed, in the amount of $910,000.00; unsecured priority claims in the amount of $1,045,323.97; and unse-

cured nonpriority claims in the amount of $4,664,070.58. The Debtor's Schedule E (Creditors Holding Unsecured Priority Claims) lists the claim of the Clark as a debt for "1998 intangible taxes" in the amount of $35,558.17. There is no indication in the schedules that Clark's claim was contingent, disputed, or unliquidated. The deadline by which a governmental entity such as Clark was required to submit a proof of claim was May 30, 2000. Clark was provided with proper notice of this deadline; however, Clark's attorney mistakenly calendared the deadline to file objections to the Disclosure Statement as the deadline for filing proofs of claim, resulting in Clark's failure to timely file a proof of claim.

On July 11, 2000, the Debtor's Amended Plan of Reorganization (the "Plan") was filed. The Plan provided for eight (8) classes, consisting of the following: (1) Class 1—Unsecured Priority Employee Benefit and Wage Claims; (2) Class 2— Secured Claims of Taxing Authorities; (3) Class 3—Secured Claim of CellMetrix; (4) Class 4—Claims of Blue Creek Ventures and First York Partners; (5) Class 5— Claim of JNC Opportunity Fund, Ltd.; (6) Class 6—Claims of General Unsecured Creditors with a Claim of $1,000.00 or less (Convenience Class); (7) Class 7—Claims of General Unsecured Creditors with a Claim in excess of $1,000.00; (8) Class 8— Interests of Equity Security Holders of Intelligent Medical Imaging, Inc. Class 2 contained Clark's claim. According to the

Plan, Classes 1, 2, and 3 were unimpaired because all allowed claims within these classes were to be paid in full on the effective date of the Plan, and thus, creditors holding claims within any of these three classes were not entitled to vote to accept or reject the Plan. Pursuant to the Plan, all assets of the chapter 11 bankruptcy estate were to be sold free and clear of all liens, and the proceeds of the sale were to be placed in a Liquidating Trust for distribution to creditors.

On August 2, 2000, Clark filed an Objection to Confirmation based on the Plan's proposed treatment of Clark's claim.[1] The Objection provided: "There are two tangible tax accounts in Palm Beach County. According to the tax records of the Palm Beach County Tax Collector, as of August, 2000, the Debtor owes a total of $88,991.72 in tangible personal property taxes. The taxes are secured by a statutory lien as provided in Fla. Stat. ch. 197.122(1) and 192.053. The Debtor's Plan (Class 2 on Page 8) provides for an unimpaired treatment of secured tax claims. The Palm Beach County Tax Collector is listed on Debtor's Schedule E as an unsecured, priority claim for 1998 'intangible' taxes." At the Confirmation Hearing held on August 7, 2000, Clark withdrew his Objection, based on the belief that the alleged tax claim, in the amount of $88,991.72,[2] would be paid in full as a Class 2 claim. Pursuant to the Certificate of Proponent of Plan, there was unanimous acceptance of the

---

1. Clark argues that his Objection to Confirmation serves as an informal proof of claim. If so, Clark's "proof of claim" was filed 64 days late.

2. The record is unclear as to the aggregate amount being sought by Clark on his claim(s). In his Objection to Confirmation, which was ultimately withdrawn, Clark claimed an aggregate balance due for 1998 and 1999 tangible personal property taxes in the amount of

$88,991.72. In the instant motions, Clark claims that the Debtor owes tangible personal property taxes in the amount of $92,188.17 for the years 1998 and 1999 and in the amount of $34,833.18 for the year 2000. No formal proof of claim, reflecting the exact amount of Clark's claim, has ever been filed in the instant case, and the Court is reluctant to speculate as to the exact amount of Clark's "proof of claim."

Plan, with the exception of the unimpaired Classes that did not vote. Thus, the Plan was confirmed without objection on August 16, 2000. On November 13, 2000, Clark filed the instant motions, requesting that the Court allow and compel payment of his claim.

■ Pursuant to Federal Rule of Bankruptcy Procedure 3003(c)(2) and (3), a creditor in a chapter 11 case must file a proof of claim on or before the claims bar date in order to make a claim against a debtor's estate, unless the creditor is satisfied by the Debtor's listing of its claim as undisputed. Federal Rule of Bankruptcy Procedure 9006(b) allows the claims bar date to be extended where the failure to timely act "was the result of excusable neglect." The Supreme Court of the United States articulated the standard of "excusable neglect" for allowing a proof of claim to be filed beyond the established claims bar date in the case of *Pioneer Inv. Serv.'s Co. v. Brunswick Assoc.'s Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

In *Pioneer,* creditors sought an extension of the claims bar deadline 20 days after the deadline expired. *See Pioneer,* 507 U.S. at 384, 113 S.Ct. 1489. The creditors claimed that the delay was caused by creditors' counsel, who was unaware of the bar date because he had recently withdrawn from his former law firm and did not have access to his copy of the case file until after the deadline had passed. *See id.* In considering what constituted neglect, the Supreme Court recognized a range of possible explanations for a party's failure to comply with a filing deadline and expressed the belief that Congress intended for courts, where appropriate, "to accept late filings caused by inadvertence, mistake, or carelessness, as well as intervening circumstances beyond the party's control." *Pioneer,* 507 U.S. at 387–88, 113

S.Ct. 1489. The Court then explained that a court's determination of whether the neglect is "excusable" should be an equitable one, whereby a court should "tak[e] account of all relevant circumstances surrounding the party's omission." *Id.* at 395, 113 S.Ct. 1489. The Court provided that the circumstances to consider include: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id.*

In finding that the neglect of the creditors' counsel was "excusable" in the *Pioneer* case, the Supreme Court considered significant the fact that the notice of the bar date was dramatically ambiguous. *See id.* at 398, 113 S.Ct. 1489. However, the Court made clear that inadequate notice of a bar deadline would not overcome factors weighing against the creditors under different circumstances. The Court stated: "To be sure, were there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say that the Bankruptcy Court abused its discretion in declining to find the neglect to be 'excusable.' " *Id.*

"In applying the *Pioneer* test, courts place the greatest weight on whether any prejudice to the other parties will occur by allowing a late claim. [citation omitted] There is no 'prejudice when all the parties can be placed in the same situation that they would have been in if the error had not occurred.' " *In re Tannen Towers Acquisition Corp.,* 235 B.R. 748, 755 (D.N.J. 1999) (quoting *In re Brown,* 159 B.R. 710, 716 (Bankr.D.N.J.1993)). In the instant case, allowing Clark's late-filed claim would cause no prejudice to the Debtor, as the case has resulted in the confirmation of

a liquidating plan. However, the claim would produce substantial prejudice to the other creditors in the case, in that it would greatly reduce the distribution to unsecured creditors. Had Clark timely filed his proof of claim, the impaired classes could have voted to reject the Plan, with the knowledge that Clark's claim, in the amount of at least $88,991.72 (as opposed to the amount of $35,558.17 listed on the Debtor's schedules), would have significantly decreased the amount available for distribution on the allowed claims of the impaired classes. Thus, if Clark's claim is allowed in an amount exceeding the amount listed in the Debtor's schedules, these impaired classes will be placed in a worse position than if the claim had been timely filed.

The factor of the length of the delay and its potential impact on judicial proceedings also weighs against allowing Clark's claim. At best, Clark's claim was filed 64 days after the claims bar date. Creditors had already voted on the Plan based on the information provided at the time, including the amount of each claim as reflected in the Debtor's schedules and the amounts of the timely-filed proofs of claim. In addition, Clark withdrew his Objection to Confirmation, effectively permitting the Plan to be confirmed. To allow Clark's late-filed claim after confirmation of the Plan would adversely affect the administration of the case, as it would significantly alter the distribution to creditors which had been anticipated under the Plan. A claims bar date in a chapter 11 case serves an important function of promoting efficient and expeditious administration of the case. "Without a final claims deadline, participants in the reorganization process would be hindered by undue caution in their negotiations and in voting on the plan ..." *Trump Taj Mahal Assoc.'s v. Alibraham (In re Trump Taj Mahal Assoc.'s)*, 156 B.R. 928, 938 (Bankr.D.N.J.1993) citing *In re Arrow Air. Inc.*, 75 B.R. 375, 378 (Bankr.S.D.Fla.1987). To allow Clark's claim after confirmation of the Plan "would undermine the stability of the confirmation process." *In re Trump Taj Mahal Assoc.'s*, 156 B.R. at 938.

The reason for the delay in the instant case was attorney error. There is no dispute as to the fact that Clark received adequate notice of the filing deadlines. Clark's attorney inadvertently recorded the deadline for filing objections to the Debtor's Disclosure Statement as the claims bar deadline. While it is clear that Clark's failure to comply with the claims bar deadline was neither a tactical decision nor a blatant disregard for a court-imposed deadline, the delay in filing a timely proof of claim was within Clark's reasonable control.

Lastly, the Court must consider whether Clark acted in good faith. There is no evidence that leads this Court to believe that Clark did not act in good faith. The failure to file a timely proof of claim was due to a mere oversight on the part of Clark. It is apparent that Clark did not act in bad faith in causing the delay. However, the good faith of Clark does not outweigh the prejudice to other parties and the adverse impact on the administration of the case in allowing the untimely proof of claim. *See In re Specialty Equipment Companies, Inc.*, 159 B.R. 236, 240 (Bankr.N.D.Ill.1993).

█ While *Pioneer* created a more flexible standard for allowing a late-filed proof of claim, the circumstances in the instant case differ greatly from those in *Pioneer*. In the instant case, Clark was provided with adequate notice, but his claim was filed at least 64 days late. In addition, allowing Clark's claim would produce prejudice to other creditors and adversely affect the judicial administration of the chap-

ter 11 proceeding, as the Plan has already been confirmed. In *Pioneer*, on the other hand, the Court found that the notice provided to creditors was inadequate, the creditors' claim was filed only 20 days late and prior to plan confirmation, and the Court found no prejudice to any other party or to the administration of the bankruptcy case. The party seeking to avoid a time bar on its claim bears the burden of proving "excusable neglect." *See In re Specialty Equipment Companies, Inc.,* 159 B.R. at 239 (citing *Hanson v. First Bank of South Dakota, N.A.,* 828 F.2d 1310, 1314 (8th Cir.1987)). Clark has failed to meet this burden. Accordingly, it is hereby

**ORDERED** that the Palm Beach County Tax Collector's Motion for Allowance of Late–Filed Claim and Motion to Allow Claim and Compel Payment to Class 2 Secured Tax Creditor is denied.