### In re PENINSULAR OIL CORPORATION, Debtor.

#### No. 9:03–bk–09574–ALP.

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

Oct. 27, 2008.

534

Jeffrey W. Leasure, Jeffrey W. Leasure, PA, Fort Myers, FL, for Plaintiff.

James LaRussa, Tampa, FL, for Defendant.

***ORDER ON MONCLA'S EMERGENCY MOTION FOR RECONSIDERATION, MONCLA'S EMERGENCY MOTION FOR STAY PENDING RECONSIDERATION, OR, IN THE ALTERNATIVE, STAY PENDING APPEAL and EMERGENCY MOTION TO ALLOW LATE FILED PROOF OF CLAIM*** (Doc. Nos. 410, 412 and 415)

ALEXANDER L. PASKAY,
Bankruptcy Judge.

THE MATTERS under consideration in this confirmed Chapter 11 of Peninsular Oil Corporation (the "Debtor") are three emergency motions filed by Moncla Well Service, Inc. ("Moncla"). On September 25, 2008, Moncla filed its Emergency Motion for Reconsideration (Doc. No. 410). On the same date, Moncla filed its Emergency Motion for Stay Pending Reconsideration, or in the Alternative, Stay Pending Appeal (Doc. No. 412). On September 30, 2008, Moncla filed its Emergency Motion to Allow Late Filed Proof of Claim and requested an emergency hearing (Doc. No. 415) (collectively, "Emergency Motions").

On September 30, 2008, the Debtor filed its Response in Opposition to Moncla's Emergency Motion for Stay Pending Reconsideration, or, in the Alternative, Stay Pending Appeal (Doc. No. 419). On October 15, 2008, the Debtor and Reef Energy LLC, Newport Oil Corporation, and Newport Energy Corporation (collectively, "Newport") filed their Joint Responses in Opposition to Moncla's Emergency Motion for Reconsideration of Peninsular Oil Corporation and Newport (Doc. No. 426). On October 16, 2008, the Debtor and Newport filed their Joint Response in Opposition to Moncla's Emergency Motion to Allow

Late–Filed Proof of Claim of Peninsular Oil Corporation and Newport (Doc. No. 427).

On October 16, 2008, at the duly scheduled and noticed hearing on Moncla's three Emergency Motions and the Responses in Opposition filed by the Debtor and Newport, this Court heard argument of counsel for Moncla and counsel for the Debtor and Newport. In addition, this Court has considered the relevant parts of the record and finds as follows.

On May 9, 2003, the Debtor filed its Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. The original bar date to file proof of claims was September 18, 2003 (Doc. No. 4). On April 3, 2006, the Official Committee of Unsecured Creditors ("Official Committee") filed its Disclosure Statement and Plan of Reorganization (Doc. No. 310). The Order on Official Committee of Unsecured Creditors' Disclosure Statement and Setting Time for Acceptances or Rejections of Plan with Notice Thereof was entered on May 15, 2006 (Doc. No. 321). The Order approving the Disclosure Statement provided, inter alia, that

> "... creditors whose claims are scheduled as disputed, contingent or unliquidated as to amount and who desire to participate in the case or share in any distribution must file their proofs of claim on or before June 16, 2006."

(Doc. No. 321). The Debtor's List of Creditors Holding 20 Largest Unsecured Claims scheduled the following claims as disputed, contingent, and unliquidated:

| Creditor | Claim Amount |
| --- | --- |
| Moncla Well Service, Inc. | $ 636,940.33 |
| Thomas Energy Services | $ 212,364.94 |
| In Well, Inc. | $ 200,000.00 |
| Halliburton Energy Services | $ 114,166.28 |
| Key Energy Service, Inc. | $ 93,044.25 |
| Baker Hughes Oilfield Operations | $ 58,709.00 |
| Schlumberger Well Service | $ 49,579.37 |
| TOTAL: | $1,360,804.17 |

(Doc. No. 24). The Plan of the Official Committee was confirmed on October 25, 2006, by entry of the Court's Order Confirming Plan of Reorganization (Doc. No. 351).

This Court has reviewed the record of this Chapter 11 case of the Debtor and notes that: (i) the record, (ii) the Disclosure Statement, (iii) the Plan of Reorganization, and (iv) the Confirmation Order are devoid of any reference which identifies or refers to the claim filed by Moncla. It is without dispute that Moncla was completely aware that the Debtor filed its Voluntary Petition for Relief under Chapter 11 on May 9, 2003. Thus, Moncla was cognizant of the pendency of the Chapter 11 case of the Debtor and most importantly, of the bar dates fixed by the Court for the filing of proof of claims. Notwithstanding the fact that Moncla was notified of the bar dates fixed by the Court as evidenced by the record, Moncla, as of the date of the hearing, October 16, 2008, has never filed a formal proof of claim.

On August 11, 2003, the United States Trustee appointed the Official Committee. The Notice of Appointment Committee of Unsecured Creditors filed with the Court did not list Moncla as serving on the Official Committee. However, Exhibit "A" attached to Moncla's Emergency Motion to Allow Late Filed Proof of Claim (Doc. No. 415), provides sufficient evidence to this Court that Moncla served on the Official Committee as evidenced by letters and email between Moncla and the Official Committee's attorney, Stewart F. Peck. On May 23, 2003, the Debtor filed its Schedule F, which reflected among various other debts, the debt to Moncla in the amount of $636,940.33. The debt to Monc-

la was scheduled as "disputed, contingent, or unliquidated," such as the remaining debts listed on the Debtor's Schedule F. Based on the foregoing, Moncla was required to file a proof of claim to be recognized as a creditor in the case.

The Plan filed by the Official Committee provided for the appointment of Mr. Gebhardt, as Managing Agent, to carry out the provisions of the confirmed Plan. The Plan was confirmed on the basis that it would be funded by the net operating revenues derived from the continued operation of the Reorganized Debtor over a five-year term. However, based the Debtor's inability to potentially make the remaining payments due under the Plan from its operating revenues, the current crisis in the oil market, and the Debtor's oil purchase contract being canceled, the feasibility of the Plan, as contemplated, was no longer feasible. Accordingly, after a substantial loss and passage of time, the Official Committee and Mr. Gebhardt concluded, that the only way to salvage the Plan was by seeking leave of the Court to try and sell all assets of the Debtor and terminate its operation. Thus, the Debtor filed its Motion for Approval of (A) Sale of Certain Assets, (B) the Proposed Distributions in Satisfaction of Allowed Pre–Petition Claims, and (C) Discharging and Releasing the Managing Agent ("Sale Motion"). The Court heard oral arguments on the Motion on September 18, 2008, and entered it Order granting the Motion on September 19, 2008 (Doc. No. 406).

The matters presently before this Court, as described earlier, are three Motions by Moncla: (1) Moncla's Emergency Motion for Stay Pending Reconsideration, or, in the Alternative, Stay Pending Appeal (Doc. No. 412); (2) Moncla's Emergency Motion for Reconsideration (Doc. No. 410); and (3) Moncla's Emergency Motion to Allow Late Filed Proof of Claim (Doc. No. 415).

It should be evident from the foregoing that the Emergency Motion to Allow Late Filed Proof of Claim, filed by Moncla, presents the threshold question before the Court. However, once resolved, this Court will be in a position to consider the additional Emergency Motions filed by Moncla. Specifically, Moncla's Emergency Motion for Reconsideration of this Court's Order Granting the Motion for Approval of (A) Sale of Certain Assets, (B) the Proposed Distributions in Satisfaction of Allowed Pre–Petition Claims, and (C) Discharging and Releasing the Managing Agent (Doc. No. 406). Because it is quite evident that if Moncla has no standing to be heard in any of these matters, the resolution of this question may negate the necessity of this Court to address Moncla's remaining Emergency Motions.

The facts relevant to Moncla's Emergency Motion to Allow Late Filed Proof of Claim are basically without dispute and can be summarized as follows:

In support of its Motion, Moncla contends that Federal Rule Bankruptcy Procedure 3003(c)(3) which establishes the requirements for filing a proof of claim, provides that the "court shall fix and for cause shown may extend the time in which a proofs of claim or interest may be filed." Fed. R. Bankr.P. 3003(c)(3). Moncla further contends that Rule 9006(b)(1) empowers the court to permit a late file proof of claim, if the movant's failure to comply with the deadline "was the result of excusable neglect." Fed. R. Bankr.P. 9006(b)(1).

The concept of excusable neglect was considered by the Supreme Court in the case of *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In *Pioneer*, the creditors sought an exten-

sion of a claim twenty days after the deadline expired. *Id.* at 384, 113 S.Ct. 1489. The Supreme Court held that, "[b]ecause Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable', we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395, 113 S.Ct. 1489. Unfortunately, *Pioneer* failed to provide detailed specific guidelines for the determination of excusable neglect; thus, the courts are guided by considering excusable neglect by equitable consideration. The Supreme Court identified the four factors to be considered in making the determination of excusable neglect: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id.* at 395, 113 S.Ct. 1489. Thus, the burden of proof is on the moving party who seeks to provide justification for its failure to file a claim based on excusable neglect.

■ In support of its Motion, that the failure to comply with the deadline "was the result of excusable neglect," Moncla cites the case of *In re Premier Membership Services, LLC,* 276 B.R. 709 (Bankr. S.D.Fla.2002), where the court held that "the mere length of delay alone is not in any way dispositive, except to the extent that the delay affect judicial proceeding." *Id.* at 715. Unlike Moncla, the creditor in *Premier,* did not receive a notice of the claims bar date and sought an extension six and one-half months after the bar date. *Id.* The court in the case of *In re Intelligent Medical Imaging, Inc.,* 262 B.R. 142, 147 (Bankr.S.D.Fla.2001), concluded that a creditor who had actual notice of the bar date, as Moncla, failed to prove excusable

neglect for filing a claim sixty-four days late. *Id.* at 146–147. The court held that allowing this claim "would produce substantial prejudice to other creditors in the case, in that it would greatly reduce the distribution to unsecured creditors." *Id.* at 146. The court further noted that "to allow ['the creditors'] late-filed claim after confirmation of the Plan would adversely affect the administration of the estate, as it would significantly alter the distribution to creditors which had been anticipated under the Plan." *Id.* The court held that to allow a late-filed claim after confirmation would "undermine the stability of the confirmation process." *Id.* (citing *In re Trump Taj Majal Assocs.,* 156 B.R. 928, 938 (Bankr. D.N.J.1993)); *See also In re Specialty Equipment Companies, Inc.,* 159 B.R. 236, 240 (Bankr.N.D.Ill.1993) (in which the court held that six months was an egregious length of time beyond the bar date). This Court is satisfied that Moncla's delay, and its failure to file a proof of claim was exclusively within the control of Moncla. The record is clear that Moncla had ample opportunity to file its claim after receiving various correspondences with respect to the claims bar dates. However, due to its own negligence, Moncla failed to file a proof of claim prior to either of the bar dates set by this Court. Furthermore, there is no competent evidence before this Court that would support Moncla's good faith in delaying the filing of its proof of claim until two years after the bar date.

■ In support of its Motion and contention that its neglect was excusable, Moncla filed an affidavit of its CFO, Bipin Pandya. According to the affidavit, Moncla was acquired by Key Energy Services, Inc. on October 25, 2007, and was "preoccupied" with its affairs. *See* Amended Affidavit of Bipin Pandya ¶ 4. The Court notes that preoccupation will never be recognized as excusable neglect. *In re HML*

*II, Inc.*, 234 B.R. 67, 71 (6th Cir. BAP 1999) citing *In re Hess*, 209 B.R. 79 (6th Cir. BAP 1997)(person otherwise "preoccupied" with other issues); *In re Albicocco*, 2006 WL 2620464 *3 (E.D.N.Y.2006) citing *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250 (2d Cir.1997)(party "preoccupied" with a bid for public office).

In further support of its argument that its neglect was excusable, Moncla admits that it neglected to hire legal counsel. *See* Amended Affidavit of Bipin Pandya ¶ 4. This contention of excusable neglect has equally been rejected as a justification for not filing a timely claim. *See In re Forant*, 2003 WL 22247234 *1 (Bankr.D.Vt.2003)(party did not timely retain counsel); *In re Payless Cashways, Inc.*, 230 B.R. 120, 139 (6th Cir. BAP 1999)(party failed to retain counsel). Moncla also states in its affidavit that the "small staff of this family business neglected to file a proof of claim." *See* Amended Affidavit of Bipin Pandya ¶ 6. However, according to official documents filed with the Securities and Exchange Commission, Moncla was the largest privately owned well service company in the United States with over nine hundred employees, and with annual revenue over $140 million dollars. *See* Attachment to Joint Response in Opposition to Moncla's Emergency Motion to Allow Late–Filed Proof of Claim of Peninsular Oil Corporation and Newport (Doc. No. 427). In sum, this Court is satisfied that the matters presented in support of allowance of a late-filed claim based on excusable neglect falls woefully short of the acceptable standard, even under the *Pioneer* case and, therefore, Moncla's Motion should be denied and the late-filed claim cannot be allowed.

Ordinarily this should conclude the matter and also the disposition of the Emergency Motions filed by Moncla, based on the fact that the Court has concluded that Moncla has no standing concerning these matters. Assuming, without conceding, that this Court's conclusion, as stated, is to be found in error, the Court will consider the record as it relates to the two Emergency Motions filed by Moncla which seek to set aside the Order which authorized the sale, distribution, and discharge of the Managing Agent.

■ The issues raised by the two Emergency Motions create some problems and one might conclude, as urged by Moncla, that this Court has no jurisdiction to enter an order approving the sale because it was a post-confirmation sale and not pursuant to the terms of the confirmed Plan. The relevant portion of the Plan provided, as noted earlier, that the Plan shall be financed by the operating revenues of the Reorganized Debtor from the continued operation of the wells. The Plan, as confirmed, does not provide for an alternative funding, such as, by the liquidation of all of the Debtor's assets.

■ Obviously, the correct procedural move would have been to seek a post-confirmation modification of the confirmed Plan pursuant to Section 1129 of the Bankruptcy Code, or, in the alternative, conversion from Chapter 11 to a case under Chapter 7. Accordingly, this Court is satisfied that Moncla's position regarding subject matter jurisdiction is just and proper. Therefore, the portion of the Order approving the "Sale of Certain Assets," entered on September 19, 2008, should be set aside and vacated. Moreover, it appears from the record that the sale of certain assets of the Debtor was consummated and the Court's approval of the sale was unnecessary and is of no consequence. However, the Court is satisfied that it clearly had jurisdiction to enter its Order with respect to the distribution of funds and the discharge and release of the Debtor's Managing Agent, Mr. Gebhardt, and

furthermore to close the Chapter 11 estate.

■ In the last analysis, this Court is satisfied: (1) that Moncla had no standing to assert any claim concerning the administration of the estate, having concluded that Moncla failed to establish excusable neglect which would justify the filing of a late claim; (2) that even in the event this conclusion is incorrect, the Court is satisfied that while the Order approving the sale shall be set aside and vacated because of lack of subject matter jurisdiction, the Order approving the distribution in satisfaction of allowed pre-petition claims and the discharge of the Managing Agent was proper.

■ In addition, Moncla also filed in the alternative, a Stay Pending an Appeal. In order to obtain a stay, it is well established that the party seeking the stay is required to demonstrate the following: (1) the likelihood of success on the merits of reconsideration or appeal; (2) moving party will suffer irreparable harm if the stay is denied; (3) no substantial harm will be suffered by other parties if the stay is granted; and (4) the public interest will not be harmed if the stay is granted. *In re Lykes Bros. S.S. Co.*, 221 B.R. 881, 884 (Bankr. M.D.Fla.1997); *In re Charter Co.*, 72 B.R. 70, 71–72 (Bankr.M.D.Fla.1987). It is without peradventure that the case of *In re Lykes Bros.* established the factors as a condition for the stay, and that the party seeking a stay "must show satisfactory evidence on all four criteria." *In re Lykes Bros. S.S. Co.*, 221 B.R. at 884. The court in *In re Lykes Bros.* held "the failure to satisfy one prong of the standard for granting a stay pending appeal dooms [the] motion." *Id.* citing *Green Point v. Treston*, 188 B.R. 9, 12 (S.D.N.Y.1995).

■ This Court is satisfied that the third prong of the standard for granting a

stay pending appeal fails since the effective date of the sale was significant due to the fact that the Plains Marketing, LP contract with the Debtor had been cancelled. *See* Exhibit "A–1" of Exhibit "A" attached to Peninsular Oil, Corporation's Response in Opposition to Moncla's Emergency Motion for Stay Pending Reconsideration, or, in the Alternative, Stay Pending Appeal (Doc. No. 419). Furthermore, the—Debtor had been informed by current owner of the TransMontaigne Storage Terminal in Port Everglades, Florida, which is Breitbum Florida LLC, that Breitbum would not accept the Debtor's crude oil to be stored at the TransMontaigne storage facility. *See* Exhibit "A–2" of Exhibit "A" attached to Peninsular Oil, Corporation's Response in Opposition to Moncla's Emergency Motion for Stay Pending Reconsideration, or, in the Alternative, Stay Pending Appeal (Doc. No. 419).

Thus, as a result of the cancellation of the purchase contract with Plains Marketing, LP coupled with Breitbum's refusal to accept any shipments of crude oil from the Debtor at the TransMontaigne storage facility, the Debtor was forced to shut-in its two producing wells in August 2008, once the on-site oil storage tanks were full. *Id.* Therefore, if the sale is stayed, the Debtor, who prior to the sale was forced to shut-in its two wells, will be unable to make additional payments to creditors and the stay will potentially create unnecessary liability for the Debtor and substantial harm to the creditors. The sale to Newport pursuant to the Base Agreement and the Sale Order will conclude the Chapter 11 case and is fully supported by the creditors committee, equity holder and the Managing Agent appointed pursuant to the Plan. Since Moncla has no allowed claim in this Chapter 11 case of the Debtor, Moncla cannot show any justification for staying the distribution of the proceeds of the sale. Based on the foregoing, this Court is satis-

fied that Moncla's Emergency Motion for Stay Pending Reconsideration, or, in the Alternative, Stay Pending Appeal (Doc. No. 412) should be denied.

In the Motion for Reconsideration, Moncla requests, that this Court stay the Sale Order so that Moncla would have "the opportunity to evaluate the assets and decide whether or not to make a competing bid and/or to seek to have its proof of claim allowed." *See* Page 5 of Moncla's Emergency Motion for Stay Pending Reconsideration, or, in the Alternative, Stay Pending Appeal (Doc. No. 412). The Court has reviewed Moncla's Motion for Reconsideration and notes that Moncla failed to cite legal authority which would support its proposition that a party who has an opportunity to assert their rights also has a right to make a competing bid two years after the claims bar date has past. The Court further notes that the Managing Agent furnished Moncla with a "Notice of Disallowed Claim" on August 8, 2008, in which the Managing Agent advised Moncla as follows:

> "Reorganized Peninsular is in the process of finalizing negotiations to liquidate its principal assets and disburse the proceeds in accordance with the plan of reorganization. Based upon available information, it appears that Moncla Well Service Inc.'s claim is disallowed and not eligible to receive a distribution. Accordingly, unless otherwise ordered by the bankruptcy court or proof of timely filing a Proof of Claim is provided by Moncla Well Service Inc. prior to September 5, 2008, the Managing Agent and reorganized Peninsular will proceed with the sale of assets and disbursement of proceeds solely to holders of allowed claims."

*See* Exhibit "A–5" of Exhibit "A" attached to Peninsular Oil, Corporation's Response in Opposition to Moncla's Emergency Motion for Stay Pending Reconsideration, or, in the Alternative, Stay Pending Appeal (Doc. No. 419). However, the Managing Agent did not receive a response from Moncla with respect to the "Notice of Disallowance of Claim." On September 5, 2008, Moncla was served with the Sale Motion, which included as an exhibit, the Base Agreement, which set forth the terms of the sale. Despite receiving various notices of the Debtor's Petition for Relief, coupled with the above-mentioned notices, and having two opportunities in which to timely file a proof of claim, Moncla failed to do so.

Lastly, Moncla failed to establish the likelihood of success on the merits. A sale of the assets and transfer of liabilities pursuant to the Base Agreement was an exercise of the Debtor's sound business judgment and the consideration included a cash purchase price to be paid to the Debtor and the assumption of plugging and abandonment, operating and environmental obligations and liabilities by the buyer, which includes the non-producing wells that the Debtor is the operator of, in addition to, the two producing wells is fair and reasonable. The sale was approved by the Official Committee and sole stockholder of the Debtor. Based on the foregoing, this Court is satisfied that there is no competent evidence to support Moncla's argument that has been presented to this Court which would warrant a stay pending appeal and, therefore, Moncla's Emergency Motion for Stay Pending Reconsideration, or, in the Alternative, Stay Pending Appeal (Doc. No. 412) should be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Emergency Motion for Reconsideration (Doc. No. 410), Emergency Motion for Stay Pending Reconsideration, Or in the Alternative, Stay Pending Appeal (Doc. No. 412), and the Emergency

Motion to Allow Late–Filed Proof of Claim (Doc. No. 415) be, and the same are hereby, denied. It is further

ORDERED, ADJUDGED AND DE-CREED that the Order Approving (A) The Sale of Certain Assets, (B) The Proposed Distributions in Satisfaction of Allowed Pre–Petition Claims, and (C) Discharging and Releasing the Managing Agent (Doc. No. 406), entered on September 19, 2008, be, and the same is hereby, set aside in part and vacated in part, as indicated above.